[No. D050694. Fourth Dist., Div. One. Oct. 24, 2007.]

In re MIGUEL A. et al., Persons Coming Under the Juvenile Court Law.
IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff
and Respondent, v.
CATHERINE A., Defendant and Respondent;
MIGUEL A., Movant and Appellant

■■■■■■■

**COUNSEL**

Valerie N. Lankford, under appointment by the Court of Appeal, for Movant and Appellant.

Ralph Cordova, Jr., County Counsel, Gustavo A. Roman, Liza Barraza and Geoffrey P. Holbrook, Deputy County Counsel, for Plaintiff and Respondent.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Respondent.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Minor Jose A.

**OPINION**

**McDONALD, J.**—In this case, we consider the question of whether the termination of parental rights in a juvenile dependency case severs the sibling relationship between that child and his or her biological brothers or sisters.

Miguel A., a biological son of Catherine A., appeals the juvenile court's denial of his Welfare and Institutions Code section 388[1] petition, which

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

sought visitation with Jose, another biological son of Catherine. Catherine's parental rights to Jose had been terminated at the time Miguel's section 388 petition was filed.

The Imperial County Department of Social Services (DSS) argues the appeal should be dismissed because Jose has been adopted, which makes the appeal moot:[2] The juvenile court no longer has jurisdiction in Jose's case and therefore cannot order visitation with him. (See § 366.3, subd. (a).) However, rather than dismiss the appeal as moot, we choose to retain the case for decision. "We exercise our discretion to decide this otherwise moot case because it raises important issues that are capable of repetition but likely to evade review." (*In re Lemanuel C.* (2007) 41 Cal.4th 33, 38, fn. 4 [58 Cal.Rptr.3d 597, 158 P.3d 148].)

## FACTS

In October 2002 Catherine, a dependent child of the court,[3] gave birth to Jose. DSS took Jose into protective custody in December and the following month filed a dependency petition on his behalf pursuant to section 300, subdivisions (b) and (g). Catherine pleaded no contest to the allegations in the petition. The juvenile court ordered reunification services for Catherine, but terminated services at the six-month review hearing. At the January 2004 section 366.26 hearing, the court terminated Catherine's parental rights to Jose and selected a permanent plan of adoption for him.

In June 2004 Catherine gave birth to Miguel. On April 5, 2005, DSS filed a dependency petition on behalf of Miguel under section 300, subdivisions (b) and (g) after Catherine left him with relatives who could not care for him. Catherine's whereabouts were unknown. On May 4 the juvenile court sustained the petition. On June 22 the court denied Catherine reunification services pursuant to section 361.5, subdivision (b)(10), (11).

On November 10 Catherine filed a section 388 modification petition requesting reunification services. As changed circumstances, the petition alleged Catherine was attending parenting classes, had obtained suitable housing, had started visiting Miguel once a week and was law abiding and in close contact with her probation officer. The petition also alleged that Catherine and Miguel enjoyed a parent-child bond. On December 5 the court

---

[2] In this regard, DSS has requested we take judicial notice of the following documents from Jose's case: an adoption agreement executed August 9, 2007; an adoption order filed August 9, 2007; and the minute order dated August 9, 2007, which shows the petition for adoption was granted. We grant the request with respect to the latter two documents and deny the request with respect to the first document. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[3] Catherine was a dependent of the juvenile court from April 2001 through February 2005.

granted Catherine's section 388 petition for reunification services after DSS stated it would not contest the petition.

On April 3, 2006, the court found Catherine had made substantial progress and ordered six more months of services.

On October 2 Miguel's attorney, who recently took over the case, questioned why the issue of sibling visitation had not been addressed.

On October 30 the court returned Miguel to Catherine's custody and ordered family maintenance services.

On February 6, 2007, the attorney representing Miguel and Jose filed section 388 petitions, which sought sibling visitation between them. On February 7 the attorney requested to be relieved as counsel because of a conflict representing both minors, and the court appointed separate attorneys for Miguel and Jose.

On March 12 the new counsel for Jose withdrew the section 388 petition filed on behalf of Jose. The court denied Miguel's section 388 petition because it found there was not a sibling relationship between Miguel and Jose. It reasoned that Catherine's parental rights to Jose were terminated before Miguel was born and minors are not siblings if they did not concurrently share a common parent.

## DISCUSSION

Miguel contends the juvenile court erred by denying his section 388 petition based on a finding that Miguel and Jose were not siblings. We agree the finding was erroneous as a matter of law.

■ Section 388, subdivision (b) allows a child to petition the juvenile court "to assert a relationship as a sibling related by blood, adoption, or affinity through a common legal or biological parent" to a dependent child of the court.[4] The petitioning child may request, among other things, visitation with the dependent child. (§ 388, subd. (b).) The petition must be verified and set forth: "(1) Through which parent he or she is related to the dependent child. [¶] (2) Whether he or she is related to the dependent child by blood, adoption, or affinity. [¶] (3) The request or order that the petitioner is seeking. [¶] (4) Why that request or order is in the best interest of the dependent child." (*Ibid.*)

---

[4] The petitioning child may be a dependent child of the court. (§ 388, subd. (b).)

■ Under section 388, subdivision (b) the petitioner may establish a sibling relationship by "blood, adoption, *or* affinity through a common legal or biological parent"; thus, there are three different methods of establishing a sibling relationship for purposes of section 388, subdivision (b). (Italics added.) It is not a prerequisite of Miguel's sibling relationship with Jose that they concurrently share a common parent. It is sufficient to establish the relationship through the first statutory alternative, namely by blood. Assuming arguendo that concurrently sharing a common parent is required, we conclude Miguel and Jose are nonetheless siblings because of their "affinity through a common legal or biological parent." (§ 388, subd. (b).) Miguel and Jose continue to share a biological parent even though they do not share a legal parent. We must assume the Legislature had a purpose in using the "common legal or biological parent" language. " ' "If possible, significance should be given to every word, phrase, sentence and part . . . ." [citation]; "a construction making some words surplusage is to be avoided." ' " (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) By including both "legal" and "biological" parents, the Legislature distinguished between two types of kinship. If termination of parental rights terminated a biological relationship as well as a legal relationship between parent and child, then the "biological parent" in section 388 would have been surplusage.

■ We acknowledge that the court and DSS have correctly pointed out Catherine and Jose no longer had a parent-child relationship because of the January 2004 order terminating Catherine's parental rights in Jose's dependency proceeding. When the court enters an order terminating parental rights in a section 366.26 proceeding, the relationship between parent and child ceases to exist, and parent and child are divested of all legal rights and powers with respect to each other. (See *In re Zimmerman* (1962) 206 Cal.App.2d 835, 843 [24 Cal.Rptr. 329].)

However, an order terminating parental rights has no effect on the relationships between the child and other biological relatives. (*In re Baby Girl D.S.* (D.C. 1991) 600 A.2d 71, 84.) Further, DSS has not presented authority that termination of parental rights affects a child's sibling relationship with a brother or sister. (See *In re Valerie A.* (2006) 139 Cal.App.4th 1519, 1523 [43 Cal.Rptr.3d 734] (*Valerie A.*) [no authority that child loses sibling status when adopted].)

Moreover, an interpretation that termination of parental rights terminates the child's relationships with other relatives would not be in keeping with the state's public policy, which during the past 15 years has favored the preservation of sibling relationships in dependency law. (See, e.g., §§ 290.1–295, 358.1, subd. (d), 361.2, subd. (i), 362.1, 366.26, subd. (c)(1)(E), 16002.)

The sibling provision in section 388 was added in 2000. (Stats. 2000, ch. 909, § 7.) In amending section 388, the Legislature pointed out: " 'By sprinkling language requiring consideration of the sibling relationship over the many statutes governing different stages of dependency proceedings, proponents hope that the goal of preserving and strengthening the child's family ties . . . will be fulfilled.' (Sen. Com. on Judiciary, Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended May 16, 2000.)" (*In re Hector A.* (2005) 125 Cal.App.4th 783, 794 [23 Cal.Rptr.3d 104].) The Legislature further noted that under then existing juvenile law, " 'many young people who are removed from their parents due to abuse and neglect are also inadvertently separated from their siblings. Sibling bonds and mutual support can be one of the most important linkages to a young person entering the juvenile dependency system. . . . [¶] . . . [¶] While sibling relationships already receive some consideration during a child's period of dependency, oftentimes the relationship is ignored or not given sufficient weight for whatever reason. This bill, it is hoped, would improve the treatment of these relationships in the context of an already complex set of state and federal rules and regulations, and thus ensure that these relationships, where they exist, are given sufficient consideration by the social workers, the courts, and the child's caregivers, ultimately for the best interest of the child.' (Sen. Com. on Judiciary, Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1987 (1999–2000 Reg. Sess.) as amended May 16, 2000.)" (*Id.* at p. 795.)

The Legislature also recognized the importance of maintaining sibling relationships by enacting section 366.26, subdivision (c)(1)(E), which became effective January 1, 2002. (Stats. 2001, ch. 747, § 3.)[5] Section 366.26, subdivision (c)(1)(E) created a fifth exception to adoption by providing that parental rights may not be terminated if the court finds that termination would substantially interfere with the child's sibling relationships. In *Valerie A., supra*, 139 Cal.App.4th at page 1519, this court addressed the meaning of

---

[5] Other statutory provisions that seek to preserve, to the greatest extent possible, relationships and contacts between siblings include section 16002, which requires the child welfare agency to take all necessary steps to facilitate continuing sibling contact when parental rights are terminated, unless the court determines contact would be detrimental to a sibling. (§ 16002, subd. (e).) The legislative intent of this statute is "to maintain the continuity of the family unit, and ensure the preservation and strengthening of the child's family ties by ensuring that when siblings have been removed from their home, either as a group on one occurrence or individually on separate occurrences, the siblings will be placed in foster care together . . . ." (§ 16002, subd. (a).)

Another statute that fosters maintaining a sibling relationship is section 366.29, which provides for postadoptive sibling contact by encouraging adoptive parents to enter into voluntary contracts in which they agree to permit continued contact with siblings. These contracts can be enforced by the juvenile court if the parties, including the siblings, are thereafter unable to agree on compliance.

sibling in the context of section 366.26, subdivision (c)(1)(E). We find that opinion instructive and controlling.

In *Valerie A.*, *supra*, 139 Cal.App.4th at page 1522, the mother had previously lost parental rights to her older daughter, who was adopted by the maternal grandmother. The mother subsequently had twin daughters, who were taken into protective custody when they were one year old and placed with the maternal grandmother. (*Ibid.*) The following year they were removed from the grandmother because she could no longer care for the twins; the twins were placed with a nonrelative foster family, which wanted to adopt them. (*Ibid.*) At the twins' section 366.26 hearing, the juvenile court found the older daughter was not a sibling and excluded all evidence regarding the sibling relationship between the older child and the twins. (139 Cal.App.4th at pp. 1522, 1524.) We held the lower court erred by finding the older child was not a sibling and reversed and remanded the case for a new permanency planning hearing with directions to permit introduction of evidence relevant to the sibling relationship between the twins and their sibling. (*Id.* at pp. 1524–1525.) We observed: "[C]hildren separated by the dependency process do not cease to be brothers or sisters for purposes of preserving relationships important to all of the affected children." (*Id.* at p. 1524.)

DSS recognizes the precedent of *Valerie A.*, but attempts to distinguish it on the ground that this case does not involve a preexisting relationship between Miguel and Jose because Miguel was born after Catherine's parental rights to Jose were terminated and they have not had contact with each other. We are not persuaded. This argument is based on DSS's premise that as a result of the termination of Catherine's parental rights in Jose's case, he and Miguel never concurrently shared a parent. However, the termination of parental rights severed only the legal parental relationship between Catherine and Jose, not the biological relationship. Further, *Valerie A.* is not restricted to siblings who have a preexisting relationship. We see no reason in logic or law to impose a preexisting relationship restriction. For example, consider a first-born child whose mother gives birth to a second child, who dies in the delivery room. One could not reasonably deny the two children are biological siblings even though they did not have a preexisting relationship.

As in *Valerie A.*, *supra*, 139 Cal.App.4th at pages 1524–1525, we note the juvenile court's error was in rejecting the threshold determination of whether Miguel and Jose were siblings within the meaning of section 388, subdivision (b). That error does not mean Miguel's petition should have been granted. We do not know if the petition would have been granted had the court held an evidentiary hearing, at which the court properly could have considered, among other things, the fact that Miguel and Jose never had contact with each other in determining the best interest prong of section 388 in ordering visitation.

## DISPOSITION

Notwithstanding the judicial error, the order is affirmed because the juvenile court no longer has jurisdiction to order visitation with Jose.

Huffman, Acting P. J., and McIntyre, J., concurred.