[No. D052400. Fourth Dist., Div. One. Aug. 20, 2008.]

In re ADRIANNA P. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Appellant, v.
ESTHER M. et al., Defendants and Respondents;
ADRIANNA P. et al., Minors and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III. and IV.

48

**Counsel**

John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, Dana C. Shoffner and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Appellant.

Maryann M. Milcetic, under appointment by the Court of Appeal, for Defendant and Respondent Esther M.

William Hook, under appointment by the Court of Appeal, for Defendant and Respondent Maurice G.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Respondent Andrew P.

Susan Bookout, under appointment by the Court of Appeal, for Minors and Appellants.

**OPINION**

**HALLER, J.**—The San Diego County Health and Human Services Agency (Agency) and the minor children, Adrianna P., M.G., Maurice G., Jr., and Q.G. (collectively, the children) appeal from orders directing the Agency to provide reunification services to Adrianna's presumed father, Andrew P., and to Maurice G., the presumed father of M.G., Maurice G., Jr., and Q.G.

Today we decide two factually related cases that concern the grant and denial of family reunification services to the parents of the four dependent children. In the related nonpublished case, *In re Adrianna P.* (Aug. 12, 2008, D052314), we discuss Esther's appeal from orders removing the children from her custody and denying her reunification services. Here we focus on appellants' challenges to orders directing the Agency to provide reunification services to Andrew and Maurice. To summarize our holdings and conclusions in their proper context, we briefly note the circumstances that gave rise to the issues presented in this appeal.

From May 2002 to June 2007, Adrianna and M.G. (together, girls) were dependents of the juvenile court due to Esther's physical abuse of Adrianna and domestic violence between Esther and Maurice. Adrianna's father, Andrew, was incarcerated for a lengthy period on felony drug charges. The Agency offered Andrew prison-based services and provided services to Maurice to address domestic violence and substance abuse issues. At the 18-month review hearing, the court terminated the fathers' services. About a year later, the court established a guardianship for the girls with Maurice's mother (grandmother) and retained jurisdiction.

Two years after the guardianship was established, the court returned Adrianna and M.G. to Esther's custody. Maurice, Jr., was then almost 18 months old, and Q.G. was born several months later. The family received

family maintenance services for six months without any reported problems. In June 2007 the court terminated jurisdiction. Three weeks later the Agency initiated dependency actions on behalf of all four children after it determined Esther was physically abusing Adrianna and M.G. At that time, Maurice was in jail. Andrew remained incarcerated.

The Agency recommended the court deny services to the parents and proceed to a permanency plan hearing under the bypass provisions of Welfare and Institutions Code section 361.5, subdivisions (b) and (e)(1).[1] The court determined there was no "clear legal direction" as to the appropriate procedure to follow when the court had denied a noncustodial parent's request for placement under section 361.2, subdivision (a), and it was not clear the bypass provisions under section 361.5 applied under the circumstances. Over the objections of the children and the Agency, the court ordered the Agency to provide services to Andrew and Maurice.

Appellants contend the court erred when it determined the bypass provisions under section 361.5 did not apply to a noncustodial parent. They further contend the court erred when it did not deny services to Andrew and Maurice under section 361.5, subdivision (b)(10), and to Andrew under section 361.5, subdivision (e)(1).

As we shall explain, we conclude the juvenile court erred as a matter of law when it determined section 361.5 did not authorize the court to bypass services to a noncustodial parent who had requested and had been denied placement of his or her child under section 361.2, subdivision (a). Despite the court's erroneous legal conclusion, we further conclude the court did not abuse its discretion when it ordered the Agency to provide reunification services to Maurice, and we affirm that order. We further conclude the court erred when it ordered the Agency to provide reunification services to Andrew, and we remand the case to the court with directions to vacate its order as to Andrew.

## FACTUAL AND PROCEDURAL BACKGROUND

Esther and Maurice began living together when Esther was pregnant with Andrew's daughter, Adrianna, who was born in October 1996. Esther and Maurice's daughter, M.G., was born in June 1998.

The record indicates Andrew had some contact with Adrianna during Adrianna's early years. However, starting in 2000, Andrew committed a

---

[1] Unless otherwise indicated, further statutory references are to the Welfare and Institutions code.

series of drug-related offenses that resulted in his commitment in August 2002 to the California Department of Corrections and Rehabilitation for a term of eight years eight months.

In May 2002 the Agency detained the girls after Esther struck five-year-old Adrianna with a belt and injured her. The court removed the girls from parental custody and ordered the Agency to offer or provide reunification services to Andrew, Maurice and Esther.

The Agency referred Maurice to a domestic violence program, counseling and substance abuse treatment for cannabis dependence and abuse. Maurice initially participated in services and visited the children almost every day. However, toward the end of 2002, Maurice stopped participating in treatment and his visits with the girls became less frequent.

The Agency sent Andrew a prison packet in March 2003.

During fall 2003, after the Agency recommended the court terminate reunification services, Maurice reengaged in services and visited the girls more frequently.

In January 2004 the court terminated services to Andrew and Maurice, and continued services to Esther. In December the court approved a permanent plan of guardianship for the girls with grandmother. Maurice continued to visit the girls several times each week.

The record suggests Maurice and Esther lived together from time to time between 1996 and 2007. Maurice and Esther had a son, Maurice, Jr., in August 2005, and a daughter, Q.G., in March 2007. Maurice was convicted in October 2006 on a felony drug charge. In April 2007 he was again arrested on drug charges. Maurice pleaded guilty to one count of possession of rock cocaine, and was sentenced to 180 days in jail, less credits, and three years' probation.

The court placed the girls with Esther under a plan of family maintenance services in January 2007, and terminated dependency jurisdiction on June 4. Several weeks later, the Agency learned Esther had hit Adrianna with a belt on a number of occasions, causing bruises. The Agency detained all four children with grandmother and filed petitions under section 300, subdivisions (a) and (j).

The Agency recommended the court remove the children from Esther's custody, deny reunification services to the parents and set a section 366.26

hearing. Andrew requested legal custody of Adrianna. Maurice asked the court to place M.G., Maurice, Jr., and Q.G. in his care.

The contested jurisdiction and disposition hearing was held on October 16, November 28 and December 17, 2007, and January 7, 2008. The court admitted into evidence Agency reports from 2006 and 2007. Social worker Jonathan Ogle testified in person and by stipulation. The court also accepted the stipulated testimony of Maurice and Maurice's probation officer.

Briefly, the evidence before the court showed, at maximum, Andrew would be incarcerated until 2011, although it was possible he might be eligible for release as early as 2009. Adrianna was reluctant to have any contact with Andrew except through written correspondence.

After Maurice was released from jail in 2007,[2] he completed an anger management class and attended parenting classes. Maurice participated in a substance abuse treatment group while waiting to enter a more intensive substance abuse treatment program. He tested negative for drugs in October. Maurice attended classes on weekdays and visited the children on weekends.

After removing the children from Esther's custody, the court determined it would be detrimental to the children to place them with their fathers under section 361.2, subdivision (a). The court noted section 361.2 did not explicitly authorize the court to deny reunification services to a noncustodial parent whose request for placement of his or her child had been denied. The court stated it was not clear whether it could bypass services to Maurice and Andrew under section 361.5, subdivision (b)(10), and declined to "exercise [the] option" to deny services to Andrew under section 361.5, subdivision (e)(1). The court stated it would "err in an abundance of caution" and ordered the Agency to provide services to Andrew and Maurice.

## DISCUSSION

### I. The Issues Raised on Appeal Are Not Moot

Andrew, Maurice and Esther (respondents) contend the issues raised on appeal have been rendered moot because Andrew and Maurice have received services for more than six months.[3] Respondents argue because the ordered

---

[2] Maurice's criminal records indicate he would have been released from jail about mid-September 2007.

[3] We take judicial notice of the court's order dated June 26, 2008, postponing the six-month review hearing originally scheduled on February 25, 2008, to August 29, 2008. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) Timelines are essential in dependency proceedings. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 674 [31 Cal.Rptr.3d 472, 115 P.3d 1133].) The better practice

services cannot be rescinded, this court cannot grant effective relief and should therefore dismiss the appeal as moot. (*In re Christina A.* (2001) 91 Cal.App.4th 1153, 1158 [111 Cal.Rptr.2d 310].)

Appellants assert this action, if moot, involves a matter of continuing public interest that is likely to recur, and this court should exercise its inherent discretion to resolve the issue. (*In re Robert A.* (1992) 4 Cal.App.4th 174, 182 [5 Cal.Rptr.2d 438]; *In re Miguel A.* (2007) 156 Cal.App.4th 389, 391 [67 Cal.Rptr.3d 307].)

We exercise our discretion to resolve the issues of first impression raised here as matters of continuing public interest that are likely to recur. (*In re Robert A., supra*, 4 Cal.App.4th at p. 182.)

## II. *Section 361.5 Controls the Provision and Denial of Reunification Services to a Noncustodial Parent Who Has Not Assumed Custody of His or Her Child Under Section 361.2, Subdivision (b)*

Appellants contend the juvenile court erred as a matter of law when it determined that it was without authority to deny services to a noncustodial parent pursuant to section 361.5 where that parent requested placement but the court denied the request under section 361.2, subdivision (a). Appellants assert section 361.2 is primarily a placement statute and argue that when a child is placed in out-of-home care, section 361.5 governs the grant or denial of reunification services to both the custodial parent and the noncustodial parent. More particularly, they contend the provisions of section 361.5 that permit the court to bypass family reunification services apply to a noncustodial parent.

Relying on prior case law authority, respondents assert section 361.2 addresses the noncustodial parent's circumstances and controls whether reunification services should be provided to that parent, while section 361.5 is "clearly directed to the custodial parent or parents." (*In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 [34 Cal.Rptr.2d 271] (*Terry H.*).) They contend appellate courts have consistently applied section 361.2 to noncustodial parents and section 361.5 *only* to custodial parents. (*Robert L. v. Superior*

in juvenile court is to adhere to the timeframe for status review hearings as mandated by the Legislature. (See §§ 361.5, subd. (a), 366.21, 366.22; see also § 352; *In re Karla C.* (2003) 113 Cal.App.4th 166, 179 [6 Cal.Rptr.3d 205] [continuances are expressly discouraged in juvenile court].) If a party believes that an issue pending on appeal has been rendered moot by a court order at a subsequent status review hearing or other proceeding, the party may bring the matter to the attention of the reviewing court. (Cal. Rules of Court, rule 8.54; see generally *Sierra Club v. Board of Supervisors* (1981) 126 Cal.App.3d 698, 704–705 [179 Cal.Rptr. 261].)

*Court* (1996) 45 Cal.App.4th 619, 628–629 [53 Cal.Rptr.2d 41] (*Robert L.*); *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1271 [65 Cal.Rptr.3d 444] (*R.S.*); *In re V.F.* (2007) 157 Cal.App.4th 962, 973 [69 Cal.Rptr.3d 159] (*V.F.*).) Accordingly, respondents assert that the bypass provisions of section 361.5 do not apply to a noncustodial parent.

This issue presents a pure question of law, which we review de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

■ As a matter of first impression, we conclude section 361.5 governs the grant or denial of reunification services to a noncustodial parent who has not assumed custody of his or her child under section 361.2, subdivision (b). We reach this conclusion for several reasons. First, on its face, section 361.2 addresses the court's authority to grant or deny reunification services to a noncustodial parent *only* where a noncustodial parent assumes custody of the child. (§ 361.2, subd. (b).) It does not specifically address the court's authority to grant or deny services to a noncustodial parent whose request for custody has been denied under section 361.2, subdivision (a).

Second, respondents' application of *Terry H.* and *Robert L.*, both decided in a different factual context, are clearly distinguishable and of little value in deciding the issues presented here. Moreover, in view of subsequent statutory changes, the dichotomy created by these cases between a custodial and noncustodial parent is no longer necessary or tenable. Rather, where the court has removed the child from the physical custody of a parent under section 361 and has determined it would be detrimental to place the child with a noncustodial parent under section 361.2, the court must order the Agency to provide reunification services to the child's mother and statutorily presumed father,[4] unless it determines that a statutory bypass exception applies under the relevant provisions of section 361.5. (§ 361.5, subds. (b), (c), (e)(1).)

Third, in view of the clear public policy favoring family reunification and the equally clear policy disfavoring services where the reunification process would not be safe for the child, or would not benefit the child and waste limited public resources, we do not believe the Legislature intended to leave a "gap" in the statutory framework concerning the grant or denial of services to a noncustodial parent. (See generally *In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1239, 1242 [34 Cal.Rptr.3d 288]; *In re Alanna A.* (2005) 135 Cal.App.4th 555, 563, 566 [37 Cal.Rptr.3d 579]; *In re Jesse W.* (2007) 157

---

[4] Where the noncustodial parent is a biological father, as defined in section 361.5, subdivision (a), the court has discretion to order reunification services when the services will benefit the child. (§ 361.5, subd. (a).)

Cal.App.4th 49, 59 [68 Cal.Rptr.3d 435]; 42 U.S.C. §§ 621, 622, 629a, 629b, 5106a(b)(2)(A)(xvi) [federal law requires reunification services except in specified circumstances].)

We explain.

■ When a child has been removed from the physical custody of his or her parents under section 361, subdivision (c),[5] the court must place the child in a safe home or setting, free from abuse or neglect. (§ 16501.15.) The safe placement of the child is governed by various provisions in the statutory scheme. (See §§ 361.2, 361.21, 361.3, 361.31, 361.4, 361.45, 387, 16507.5; see also § 16525.30.) Section 361.2 governs placement when the child has a parent *"with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300."*[6] (§ 361.2, subd. (a), italics added.) It directs that before the child may be placed in out-of-home care, the court must *first* consider placing the child with the noncustodial parent, if that parent requests custody. (*R.S., supra,* 154 Cal.App.4th at p. 1271; *V.F., supra,* 157 Cal.App.4th at p. 973.)

■ If the court places the child with the noncustodial parent, the court initially has three alternatives. The court may order the noncustodial parent to assume custody of the child, terminate juvenile court jurisdiction and enter a custody order. (§ 361.2, subd. (b)(1).) It may continue juvenile court jurisdiction and require a home visit within three months, after which the court may make orders as provided in subdivision (b)(1), (2) or (3). (§ 361.2, subd. (b)(2).) Or the court may order *reunification services* to be provided to either or both parents and determine at a later review hearing under section 366.3 which parent, if either, shall have custody of the child. (§ 361.2, subd. (b)(3).)

If the court determines the child's placement with the noncustodial parent would be detrimental to the child's safety, protection, or physical or emotional well-being, the court is required to order the care, custody, and control of the child to be under the supervision of the social worker. (§ 361.2, subds. (d), (e)(1)–(8); see also § 361.2, subds. (f), (g), (h), (i), (j) [addressing additional requirements and preferences concerning placement].)

---

[5] A parent who had physical custody of the child before the child was removed from the home is often referred to as the "custodial parent." (See *Terry H., supra,* 27 Cal.App.4th at p. 1856; *Robert L., supra,* 45 Cal.App.4th at p. 628; *V.F., supra,* 157 Cal.App.4th at p. 969.)

[6] The Legislature and the courts have used the phrase "noncustodial parent" to refer to a parent described by section 361.2, subdivision (a). (See § 361.2, subd. (e)(1); *R.S., supra,* 154 Cal.App.4th at p. 1271; *V.F., supra,* 157 Cal.App.4th at p. 969 & fn. 4; *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1454 [45 Cal.Rptr.3d 445].)

Other than when section 361.2, subdivision (b)(3) applies, section 361.2 is silent on the issue of reunification services. Thus the juvenile court's observation that section 361.2 did not authorize it to *deny* reunification services to Andrew and Maurice was valid. However, neither does section 361.2 authorize the court to *grant* reunification services to a noncustodial parent who does not assume custody of his or her child. While respondents assert section 361.5 does not apply to a parent in Andrew's and Maurice's circumstances, they do not identify any other statutory provision that would authorize the court to provide reunification services to a noncustodial parent who has not assumed custody of his or her child. Further, respondents do not take into account the comprehensive nature of section 361.5.

■ Within the statutory framework of the California dependency scheme, section 361.5 generally governs the provision of family reunification services to the child's parents. It also specifically describes the circumstances in which the court may (and in some circumstances, must) bypass those services. (§ 361.5, subds. (b), (e)(1).) The section details who is *entitled to receive* mandatory reunification services, who *may receive* reunification services, the circumstances under which the court *may deny* reunification services to someone otherwise entitled to receive them, and those circumstance under which the court *must deny* reunification services. Given this comprehensive framework, the central importance of an appropriate reunification plan to the dependent child, and the carefully delineated exceptions to reunification services, it is unlikely the Legislature intended to strip the court of its authority to deny services to a noncustodial parent pursuant to an applicable bypass provision simply because of the parent's status as a noncustodial, as opposed to a custodial, parent.

Statutory changes enacted in 1997 support this conclusion. Effective January 1, 1998, the Legislature enacted revisions to section 361.5 and changed those entitled to reunification services under section 361.5, subdivision (a). Instead of using the term "parents," the Legislature clarified that "the child's mother and statutorily presumed father" were entitled to receive reunification services, unless an exception applied. The amended statute also gave the court the discretion under certain circumstances to order services to "the biological father." (Stats. 1997, ch. 793, § 17.) In enacting these revisions to section 361.5, subdivision (a), the Legislature did not distinguish between a custodial and noncustodial parent, although earlier cases such as *Terry H.* and *Robert L.* had interpreted the term "parent" to refer only to a custodial parent. Because the Legislature is deemed to be aware of judicial decisions in existence, and to have enacted or amended a statute in light of prior case law, the fact the Legislature did not limit section 361.5, subdivision (a) to custodial parents is significant. (*People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078]; *People v. Neild* (2002) 99 Cal.App.4th 1223, 1226 [121 Cal.Rptr.2d 803].)

At the same time the Legislature revised section 361.5, subdivision (a), it also added paragraph (13) (now par. (14)),[7] to the bypass provisions identified in section 366.26, subdivision (b). This exception provides the court need not provide reunification services when the "parent or guardian of the child has advised the court that he or she is not interested in receiving family maintenance or family reunification services or having the child returned to or placed in his or her custody and does not wish to receive family maintenance or reunification services." (§ 361.5, subd. (b)(14).) Again, the Legislature did not distinguish between a custodial and noncustodial parent.

■ In construing the meaning and significance of these revisions, we look to the words of the statutes to determine legislative intent and to fulfill the purpose of the law. (*Gooch v. Hendrix* (1993) 5 Cal.4th 266, 282 [19 Cal.Rptr.2d 712, 851 P.2d 1321]; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 574 [49 Cal.Rptr.2d 713].) The language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose. (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

■ Applying these principles, we conclude the juvenile court is not required to distinguish between a custodial and noncustodial parent when ordering or bypassing reunification services for a child in out-of-home placement. Section 361.5, subdivision (a), now clearly directs the court to provide reunification services to the child's mother and statutorily presumed father, unless a statutory bypass exception applies. Moreover, the previously used term "parents," interpreted by *Terry H.* and *Robert L.*, to apply only to the custodial parent, has been supplanted by the phase "mother or statutorily presumed father" without regard to the parent's custodial status. (§ 361.5, subd. (a).) Similarly, the futility of mandating an order of reunification services to a noncustodial parent who does not seek family reunification is now specifically identified as one of the enumerated bypass provisions. (§ 361.5, subd. (b)(14).)

We recognize that before these amendments were enacted, case law supported respondents' argument that section 361.5 is "clearly directed to the custodial parent or parents" and does not, "by its terms, encompass the situation of the noncustodial parent." (*Terry H., supra,* 27 Cal.App.4th at p. 1856; *Robert L., supra,* 45 Cal.App.4th at p. 619.) We also recognize that reviewing courts generally referred to section 361.5 as applying only to custodial parents and section 361.2 to noncustodial parents. (*R.S., supra,* 154

---

[7] The Legislature subsequently renumbered paragraph (13) of section 361.5, subdivision (b). It is now designated as section 361.5, subd. (b)(14). (Stats. 2001, ch. 653, § 11.33.)

Cal.App.4th 1262; *V.F., supra,* 157 Cal.App.4th 962.)[8] While then existing statutory language properly compelled such a dichotomy, the 1997 amendments to section 361.5 undermine this distinction.

Similarly, the factual context in which these cases were decided is far different than those presented here. As noted, at the time *Terry H.* and *Robert L.* were decided, section 361.5 directed the court to provide reunification services to " 'the minor and the minor's parents . . . for the purpose of facilitating [family] reunification . . . .' " (*Terry H., supra,* 27 Cal.App.4th at p. 1854; *Robert L., supra,* 45 Cal.App.4th at p. 628.)[9] In *Terry H.,* this court addressed whether section 361.5, subdivision (a) mandated the provision of reunification services to a noncustodial parent who did not wish to assume custody of his or her child. There, at the time of the disposition hearing, the noncustodial parent was unable to care for his children and was not currently seeking custody, although he did not rule out doing so in the future. (*Terry H., supra,* at pp. 1850–1851.) The focus of the case plan was the children's reunification with their mother. (*Id.* at p. 1853.)

In concluding it would be illogical and wasteful to require that the juvenile court order services to a parent who was not seeking reunification, this court interpreted the term "parents" in section 361.5 to refer only to the parent or parents from whom the child was removed under section 361, subdivision (c). (*Terry H., supra,* 27 Cal.App.4th at p. 1856; accord, *Robert L., supra,* 45 Cal.App.4th at p. 628.) Unlike the issue here, the cases on which respondents rely concerned the court's authority to deny reunification services to a noncustodial parent who did not seek custody of the child, not the court's authority to deny or provide services to a noncustodial parent who sought but was not granted custody of the child.

---

[8] *R.S., supra,* 154 Cal.App.4th at page 1271, and *V.F., supra,* 157 Cal.App.4th at page 973, held that where there is a noncustodial parent of the child, the court is required to first proceed under section 361.2, subdivision (a) to determine whether that parent wishes to assume custody of his or her child and, if so, whether placement with that parent would be detrimental to the child. Until the court makes that determination, section 361.5 does not apply to the noncustodial parent.

These cases are not relevant to the circumstances here, in which the court properly considered Andrew's and Maurice's requests for custody under section 361.2, subdivision (a), and determined that neither father was able to safely assume custody of his child or children.

[9] Section 361.5, subdivision (a) then stated, in pertinent part: " '[W]henever a minor is removed from a parent's . . . custody, the juvenile court shall order the probation officer to provide child welfare services to the minor and the minor's parents . . . *for the purpose of facilitating reunification of the family* within a maximum time period not to exceed 12 months.' " (*Robert L., supra,* 45 Cal.App.4th at p. 628.)

■ Our conclusion that section 361.5, including its bypass provisions, can apply to a noncustodial parent is consistent with public policy consideration underlying the goal of family reunification. It is axiomatic that reunification services play a "crucial role" in dependency proceedings and a case plan must be carefully tailored to meet the needs of the child and family. (*In re Alanna A., supra,* 135 Cal.App.4th at p. 563; §§ 300.2, 16501.1, 16501.2, 16507.) Whether the court has removed the child from a custodial parent or has denied a noncustodial parent's request for placement, the focus of the proceedings is to reunify the child with *a parent,* when safe to do so for the child. (§§ 300.2, 361.5, subd. (a), 16507.) However, there are circumstances in which reunification with a particular parent is presumptively contrary to the child's best interest.[10] (§ 361.5, subds. (b), (e); 42 U.S.C. § 5106a(b)(2)(A)(xvi).) When those circumstances apply, the bypass provisions of section 361.5 protect the child, promote the child's permanency and stability, and help focus limited resources where they can best effect the goals of child protection and family reunification. These provisions have a crucial role in meeting the primary goals of dependency proceedings, and logically apply to both a custodial and noncustodial parent.

■ In summary, when the court removes a child from parental custody, it must first determine whether there is a noncustodial parent that desires to assume custody of the child. (§ 361.2, subd. (a).) If the court does not order the noncustodial parent to assume custody under section 361.2, that is, if the court determines that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child, the court then proceeds to section 361.5, which generally governs the grant or denial of family reunification services.

If the noncustodial parent is not interested in reunification, the court may deny reunification services to that parent under section 361.5, subdivision (b)(14) as provided in that paragraph. If, as here, the noncustodial parent seeks reunification with his or her child, the court must order reunification services unless a specific statutory exception applies. (*In re Alanna A., supra,* 135 Cal.App.4th at pp. 563–564.)

Having determined section 361.5 applies to a noncustodial parent, we now discuss application of its bypass provisions to Andrew and Maurice.

---

[10] For example, these circumstances include where the parent has willfully abandoned the child, caused the death of another child through abuse or neglect, severely physically or sexually abused the child or a sibling, chronically used drugs or alcohol and resisted treatment, raped the child's mother, resulting in the child's conception, or had parental rights terminated to another child and has not subsequently made a reasonable effort to treat the problems that led to that proceeding. (See § 361.5, subd. (b).)

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The case is remanded to the juvenile court with directions to vacate its order granting reunification services to Andrew. The order directing the Agency to provide reunification services to Maurice is affirmed.

McDonald, J., concurred.

**HUFFMAN, Acting P. J.,** Concurring.—I concur in the holding and the reasoning in the majority opinion except for part IV. As to part IV., I concur only in the result.

---

*See footnote, *ante*, page 44.