Filed 5/29/13  In re A.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E055744 / E056638 |
| Plaintiff and Respondent, | (Super.Ct.No. J240265) |
| v. | OPINION |
| M.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Barbara A. Buchholz, Judge.  Dismissed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Adam E. Ebright, Deputy County Counsel, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

In two dependency appeals, consolidated for purposes of oral argument and decision, M.H., the father of A.C., challenges the orders made by the juvenile court denying father's three requests to represent himself and father's additional request for gas vouchers so that he could conduct visitation in Landers in San Bernardino County rather than Cabazon in Riverside County.

A.C. was returned to the custody of father and mother in October 2012 and the dependency case was dismissed by the juvenile court in January 2013. (E057405; Evid. Code, § 459.) After reviewing the record, we have determined that the issues raised by father no longer present a justiciable controversy. Therefore, the appeals are DISMISSED as moot.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

We have briefly summarized the proceedings below to illustrate why father's present appeals are moot.

A.C. was born in August 2011. She was immediately detained by CFS (San Bernardino County Children and Family Services). Father was disruptive at the hospital and had to be removed by the police. Father had a criminal record and a history of domestic violence. The dependency petition alleged parents' failure to protect A.C. because of mental illness, substance abuse, and domestic violence.

Throughout the dependency proceedings father was often uncooperative and confrontational. Between August 2011 and February 2012, although father participated in reunification services, he also tried to intimidate the social workers by threats and menacing behavior.[1] In a hearing on a restraining order, father asserted his conduct directed at CFS was protected by his constitutional rights of free speech and association. Nevertheless, the court granted a restraining order against father in February 2012.

On several occasions, father asked to represent himself because he believed there was evidence that CFS was biased against him and he thought his two appointed attorneys were not adequately representing his positions to the court. Father admitted he was confused about the dependency process although he had taken some courses in criminal justice. The court ultimately determined it was in the best interests of father and child for father to be represented by legal counsel well-versed in dependency law.

Between February and July 2012, father's reunification efforts improved significantly although there continued to be conflict between father and CFS. In April 2012, a psychotherapist concluded that, in spite of father's personality disorder—impaired judgment and impulsive behavior—father "has the willingness and ability to be a virtuous parent."

At the six-month review hearing in July 2012, when A.C. was still in foster care, the court ordered father to have unsupervised visitation for six hours to occur in Cabazon. Father objected to having visitation with A.C. in Cabazon because he wanted to have

---

[1] We will spare the parties a fuller recitation of father's actions, which also involved harassing, spying on, and surveiling the CFS social workers.

visitation in the high desert in Landers where he lived. Father preferred to drive A.C. back to Landers where he believed it would be cooler in the summer and A.C. would be more comfortable at his residence and where father would avoid the possibility of being harassed or arrested in a public place because of his extensive tattoos. Father also needed gasoline vouchers so he could drive the child back and forth between Cabazon and Landers. The court did not order visitation in Landers but authorized returning A.C. to the parents' care with family maintenance services by information packet.

On October 11, 2012, the juvenile court conducted the 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f)) and ordered A.C. returned to father and mother's custody, under family maintenance services, and authorized CFS to request dismissal of the case by approval packet if appropriate.[2]

On January 22, 2013, the juvenile court ordered A.C. returned to her parents' custody, discharged the child as a dependent of the juvenile court, and dismissed the dependency action. (E057405; Evid. Code, § 459.)

III

MOOTNESS

Father has filed three appeals. This court dismissed his most recent appeal (E057405) on March 15, 2013, as moot, citing *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488: "As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. [Citation.]"

---

[2] We grant respondent's request for judicial notice filed November 6, 2012. (Evid. Code, §§ 452, 454, and 459.)

4

In his two earlier appeals (E055744 and E056638), father argues the juvenile court committed reversible error when the court denied his three requests to represent himself so he could subpoena various witnesses and pursue his claims of bias involving the CFS social workers. Father contends there could have been a more favorable outcome if he had been allowed to represent himself. In his second appeal (E056638), father also argues the juvenile court erred in ordering father to have six-hour unsupervised visits in Cabazon for three months between July and October 2012, when father preferred to conduct visitation at his residence in Landers—a round trip of 100 miles—and father required gas vouchers to make the trip.

In September 2012, all the appellate briefing had been completed in E055744 and father had filed his opening brief in E056638. In October 2012, the parents regained custody. The juvenile court dismissed the dependency case in January 2013. Consequently respondent argues in the second appeal that both appeals should be deemed moot. Father makes various arguments about why the appeals are not moot. Based on the following analysis, we find the issues raised in the appeals are moot.

An appellate court's jurisdiction extends only to actual controversies for which the court can grant effective relief. An action no longer presents a justiciable controversy if the questions raised in the appeal have become moot because of subsequent events. (*In re Christina A.* (2001) 91 Cal.App.4th 1153, 1158.) If a reversal would have no practical effect, the appeal should be dismissed. (*In re Dani R.* (2001) 89 Cal.App.4th 402.)

Where there is no danger of error infecting the outcome of *subsequent* proceedings in the case, an appeal is moot. Because of the dismissal of the dependency case involving

5

A.C., there are no subsequent proceedings to be affected. In two cases relied upon by father—*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404 and *In re Dylan T.* (1998) 65 Cal.App.4th 765, 769—there were continuing issues, including visitation, in ongoing dependency cases which kept the appeals from being moot. In this case, however, there is no ongoing case and no subsequent proceedings. Issues about self-representation and visitation have no continuing viability because father has regained custody of A.C. and the dependency has terminated.

For the same reason, no negative findings on the record have the potential to cause prejudice to father in any future proceedings. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432 [finding of sexual abuse]; *In re C.C., supra,* 172 Cal.App.4th at p. 1488 [order denying visitation].) Even if another dependency proceeding should commence, the issues of self-representation and visitation would be specific to that case and the juvenile court's previous ruling on these matters would have no bearing on a new and different dependency case. If father should seek to represent himself in some later dependency proceeding, the court's decision necessarily will be based on the factual circumstances then, not on the court's rulings in 2011 and 2012. Certainly, the unique question of whether the court should have ordered father to be given gasoline vouchers to facilitate visitation in Landers instead of Cabazon for three months is now moot and cannot be resolved on appeal

We reject father's characterization of the issues he raises as being of continuing public interest and capable of repetition while evading review. (*In re Miguel A.* (2007) 156 Cal.App.4th 389, 392 [the effect of adoption on sibling relationships].) The

6

visitation order in July 2012 was well within the juvenile court's discretion and ultimately offered no obstacle to father regaining custody of A.C. in October 2012. Furthermore, nothing in the record suggests the court may have erred in denying father's requests to represent himself or that father suffered any prejudice whatsoever. More likely, father was able to regain custody of A.C. in part due to the efforts of the two lawyers who successfully represented him despite his protests against their efforts.

## IV

## DISPOSITION

We conclude there no longer exists any justiciable controversy and any reversal of the orders involving self-representation or visitation in the dismissed dependency case would be meaningless.

Father's appeals are DISMISSED.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:

RAMIREZ_____
        P. J.

McKINSTER_____
        J.