Filed 11/13/20  In re A.G. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | |
| | D077344 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4430) |
| v. | |
| B.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Due to domestic violence between his parents, one-year-old A.G. was adjudicated a dependent and placed with his mother on the condition that A.G.'s father, B.C. (Father), could not reside with the family. The parents violated this condition and failed to comply with their case plans, causing A.G.'s counsel (minor's counsel) to file a Welfare and Institutions Code section 388[1] petition to remove A.G. from his mother.

Prior to the hearing on the section 388 petition, the San Diego County Health and Human Services Agency (Agency) did not detain A.G. with certain relatives on an emergency basis (§§ 309, 361.4) due in part to those relatives' child welfare histories, i.e., reports indicating that the relatives had abused or neglected other children. The juvenile court denied Father's request for an immediate order requiring the Agency to disclose the child abuse reports, citing the other children's privacy interests.[2]

On appeal, Father contends the Agency was required to share the results of its child welfare history check so that the court could decide whether to detain A.G. with relatives on an emergency basis. The Agency responds that the issue is moot in light of A.G.'s placement on a nonemergency basis with nonrelative extended family members, any error was harmless because detention with the relatives was not possible for other reasons, and the juvenile court did not err. We find merit in the Agency's position and accordingly, affirm the court's ruling.

---

[1]    Further unspecified statutory references are to the Welfare and Institutions Code.

[2]    The court did not foreclose the filing of a petition under section 827, which generally governs the release of confidential information from juvenile case files.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, the Agency filed a petition on behalf of A.G. due to domestic violence between his parents. (§ 300, subd. (b).) The juvenile court detained A.G. with his mother (Mother) in the home of maternal grandmother and ordered Father not to reside in the family home. The court granted Father separate, unsupervised visits.

During the investigation of A.G.'s case, the Agency noted that the "parents are very young, the mother is 16 years old and the father is 18 years old[,] and they need a strong support system to have their own basic needs met[.]" In evaluating the parents' support system, the Agency communicated with Mother, Father, and various family members. Father disclosed that he and his siblings were physically abused as children by their mother (paternal grandmother) and stepfather, and Father lived in three foster homes between the ages of five and 10.[3] Paternal grandmother and stepfather had a violent relationship. When he was 10 years old, Father reunified with his mother.

At the jurisdictional and dispositional hearing in August 2019, the court made a true finding on the petition, placed A.G. with Mother on the condition that Father not reside with them, and ordered family maintenance services.

During the ensuing six-month review period, neither parent was compliant with his or her case plan, Mother and A.G. lived with Father in a motel for some period of time, and she became pregnant again with another of Father's children. Mother was also arrested for noncompliance with her terms of probation. The Agency filed a report detailing these events and recommending continued family maintenance services.

---

[3]     Father has four siblings, one of whom is still a minor.

On February 20, 2020,[4] minor's counsel filed a section 388 petition, requesting A.G.'s removal from Mother. The next day, the court made a prima facie finding that circumstances had changed and removal from Mother's care would be in A.G.'s best interests. An evidentiary hearing on the section 388 petition was set for March 12. In the interim, the court detained A.G. at Polinsky Children's Center (Polinsky) and set a special hearing on February 26 to address the issue of detaining A.G. with a relative or nonrelative extended family member (NREFM).

In an addendum report, the Agency described its relative placement efforts. There were three relatives who had expressed interest in caring for A.G., and the Agency had begun assessments of them under the Resource Family Approval (RFA) process.[5] The Agency had been unable to approve two relatives (maternal cousin and paternal grandmother) for emergency placement due in part to these relatives' child welfare histories. The third relative (paternal aunt) was in the process of moving and could not have her home assessed until she moved.

Specifically, the Agency reported it had "completed a CWS[6] background check for [maternal cousin], and there is concerning history that requires this

---

[4]     Further unspecified dates occurred in 2020.

[5]     Emergency placement procedures are abbreviated compared to the standard RFA process but still must include "an in-home inspection to assess the safety of the home and the ability of the relative or nonrelative extended family member to care for the child's needs," a "state-level criminal records check" for all adults living in the home, and "a check of *allegations of prior child abuse or neglect* concerning the relative or nonrelative extended family member and other adults in the home." (§ 361.4, subd. (a), italics added; see also § 309, subd.(d)(1).)

[6]     CWS stands for child welfare services. (§ 16500 et seq.)

home evaluation to be sent to the standard RFA unit. Additionally, [maternal cousin's] adult daughter has yet to provide her driver[']s license number to complete the RFA referral." Likewise, paternal grandmother had a "past CWS history," which would require the home evaluation be sent to the standard RFA unit.[7] Paternal grandmother also advised the Agency that there were 11 people living in her home, including adults and children, and "not all of the [adults] could provide [social security and driver license] information," but she would follow up with them to retrieve it.

At the February 26 special hearing, Father requested that the Agency be ordered to divulge the relatives' "C.A.C.I. results" or "C.A.C.I. information"[8] so the court could consider detaining A.G. with those relatives on an emergency basis. The Agency's position was that it was not at liberty to release confidential child welfare history without a section 827 petition, notice to all affected individuals, and a disclosure order. The Agency's counsel stated that, even redacted, "there's enough information in those [child welfare] records that individuals [can] determine who the minors [are], and, therefore, their privacy rights are really not protected" by redaction. Similarly, the Agency was concerned about its ability to adequately

---

[7] It may be reasonably inferred from the record that paternal grandmother's CWS history related in some part to Father and his four siblings.

[8] CACI stands for Child Abuse Central Index. (Pen. Code, § 11169.) It is a database of child abuse reports maintained by the Department of Justice, which the Agency is required to check prior to placing a child in a prospective home. (Pen. Code, § 11170; Health & Saf. Code, § 1522.1.) Father's counsel proposed that even if it was not appropriate to disclose details of a child abuse or neglect case, the Agency could provide "the dates of the case, what the case was generally about, [and] whether the child was returned to the [relative]."

summarize a child abuse incident without inadvertently revealing the child's identity.

After hearing counsel's arguments, the juvenile court denied Father's request, acknowledging it did not have the relatives' child welfare history but believing on balance that it was better to "err on the side of protecting the confidentiality of the children." The court continued A.G.'s detention at Polinsky and invited appellate guidance on the issue.

Father appealed the February 26 ruling.[9]

Thereafter, the Agency reported it was continuing its assessment of relatives. Paternal grandmother had not yet provided the social security numbers of the individuals residing in her home. Paternal aunt, who had reportedly been in the process of moving, had become unresponsive to the Agency's calls.

At the March 12 evidentiary hearing on A.G.'s section 388 petition, the court found there had been a change of circumstances and it was in A.G.'s best interests to be removed from Mother. The court ordered the child's detention at Polinsky pending placement in foster care and the continued evaluation of relatives and NREFM's. A six-month review hearing was set for September 10.

---

[9]     Father has requested our judicial notice of a subsequent juvenile court order dated March 12. We deny his request as moot because the order is already part of the augmented appellate record, along with two addendum reports filed by the Agency for the March 12 evidentiary hearing on A.G.'s section 388 petition. The Agency has filed a second unopposed motion to augment the record with (1) an Agency report filed for a September 10 review hearing, and (2) the related juvenile court minute order. The motion to augment is granted, and the documents are deemed part of the record. (*In re K.M.* (2015) 242 Cal.App.4th 450, 456 ["Postjudgment evidence may . . . be used to show that the appeal, or an issue involved, is moot."].)

The Agency's September report states that A.G. was placed in one foster home from April to July, and thereafter, A.G. was placed in the home of Father's former foster mother, an NREFM. A.G. was doing well. The NREFM was willing to care for A.G. on a permanent basis if he was unable to reunify with his parents.

## DISCUSSION

A. *The Agency's Motion to Dismiss*

The Agency moves to dismiss the appeal on grounds that Father is seeking review of a nonappealable interlocutory order. Citing *In re B.P.* (2020) 49 Cal.App.5th 886, 889 (*B.P.*), the Agency argues the February 26 ruling on Father's request for a disclosure of CACI results and continuing A.G.'s detention at Polinksy (February order) was merely temporary or interim to a "dispositional" order that occurred on March 12, when the court granted A.G.'s section 388 petition. The Agency asserts that only the March 12 order is appealable.

In opposition, Father contends the dispositional order in this case occurred in 2019 (when A.G. was adjudicated a dependent), subsequent orders after judgment are appealable under section 395, and the Agency never filed a supplemental petition to begin another jurisdictional phase like in *B.P.* and analogous cases. (*B.P.*, *supra*, 49 Cal.App.5th at p. 890 [§ 342 subsequent petition requires new jurisdictional and dispositional hearings]; *In re Javier G.* (2005) 130 Cal.App.4th 1195, 1200 [§ 387 supplemental petition requires a bifurcated jurisdiction and disposition hearing].) Father points out that a section 388 petition does not require or contemplate a new jurisdictional phase.

Section 395 "governs juvenile dependency appeals. It provides, 'A judgment in a proceeding under Section 300 may be appealed in the same

7

manner as any final judgment, and any subsequent order may be appealed as an order after judgment.' Under this provision, the dispositional order on a section 300 petition is the appealable judgment." (*B.P.*, *supra*, 49 Cal.App.5th at p. 889.) "[A]ny order entered after the dispositional hearing (with one exception not pertinent here) is appealable as an order after judgment." (*In re Daniel K.* (1998) 61 Cal.App.4th 661, 667; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.)

We are persuaded the February order is an appealable order after judgment and accordingly, deny the Agency's motion to dismiss. An adjudication of dependency already occurred by the time of the section 388 petition, and the Agency did not file a subsequent petition to initiate new jurisdictional and dispositional phases. Thus, the order entered on February 26 is appealable.

Even assuming A.G.'s section 388 petition served as a de facto supplemental petition that triggered new predispositional phases, and the section 388 petition was not adjudicated until March 12, we would exercise our discretion to construe Father's premature appeal as filed from the March 12 hearing. (Cal. Rules of Court, rule 8.406(d).)

B. *Suitability of Deciding the Merits of This Appeal*

The issue in this case is whether, or under what circumstances, the Agency may disclose a relative's child welfare history with the participants of a dependency case to facilitate a juvenile court's emergency placement decision.

The Agency contends that Father's appeal is moot because there is no longer a controversy over the issue of disclosing information for emergency placement purposes (§§ 319, 361.4). A.G. has been placed on a nonemergency basis in the approved home of Father's former foster mother, an NREFM.

8

Father acknowledges the "detention phase" has passed but argues that effective relief may be granted because the juvenile court can be directed to reevaluate A.G.'s placement on remand.[10] Even if moot, Father urges us to exercise our discretion to decide an issue of continuing public importance that is capable of repetition yet evades review.

"An appellate court will not review questions which are moot and only of academic importance, nor will it determine abstract questions of law at the request of a party who shows no substantial rights can be affected by the decision either way. [Citation.] An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. [Citations.] On a case-by-case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054-1055; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1414 [dispositional order rendered detention order moot].)

Even if an issue is technically moot, a court may exercise its discretion to address important issues that are capable of repetition but likely to evade review. (*In re Miguel A.* (2007) 156 Cal.App.4th 389, 392.) However, courts of review generally refrain from exercising their inherent discretion to resolve moot appeals that are largely factual. (See, e.g., *Giles v. Horn* (2002) 100

10    In his reply brief, Father asserts the reason why the paternal grandmother is not approved for emergency placement remains "a mystery," but does not address why an emergency placement is needed at this stage of the case. We further note that, based on Father's own report that he and his siblings were physically abused as children by paternal grandmother, some portion of her child welfare history may be reasonably inferred by the juvenile court.

Cal.App.4th 206, 228 (*Giles*) ["Because plaintiffs' claim is a particularly factual determination that must be resolved on a case-by-case basis, dependent upon the specific facts of a given situation, it is not one on which we would exercise our discretion to address on the merits"].)

Our ability to grant effective relief in this case is speculative. At the detention phase, the juvenile court has authority to "order the temporary placement of the child in any of the following for a period not to exceed 15 judicial days: [¶] (i) The home of a relative, an extended family member . . . or a nonrelative extended family member . . . that has been assessed pursuant to Section 361.4." (§ 319, subd. (h)(1)(A)(i); see also § 309, subd. (d).) Section 361.4, in turn, covers the Agency's duties with respect to emergency placements, including the duty to "[c]onduct a check of allegations of prior child abuse or neglect concerning the relative or nonrelative extended family member and other adults in the home" (§ 361.4, subd. (a)(3).)

The Agency checked CACI, which "consists of an index of all reports of child abuse and severe neglect submitted to the DOJ [(Department of Justice)] pursuant to the CANRA [(Child Abuse and Neglect Reporting Act)] under Penal Code section 11169. (*Id.*, § 11170, subd. (a).) In maintaining the CACI, the DOJ acts as a repository of the reports (*ibid.*), and the CANRA contains specific provisions setting forth the limited categories of persons who have access to the CACI. (Pen. Code, § 11170, subds. (b)-(e).)" (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 921, fn. 1.) Like juvenile case files, reports of suspected child abuse forwarded to the DOJ are confidential. (Pen. Code, § 11167.5.) Father asserts that the Agency should have been required to disclose, or was not precluded from disclosing, the reports of child abuse allegedly perpetrated by the relatives that appeared in the CACI (CACI reports).

10

However, A.G. has been placed in the approved home of an NREFM, and there is no indication in the record that he requires a change in placement. Requiring the disclosure of the relatives' CACI reports now would serve no apparent purpose. (*In re N.V.* (2010) 189 Cal.App.4th 25, 31 (*N.V.*) (["Once a child is placed in the home of a nonrelative at the dispositional hearing, the relative placement preference does not arise again until 'a new placement of the child must be made.' "].) Subsequent events have rendered this appeal moot.

In addition, the issue of disclosing CACI reports for emergency placement purposes strikes us as one "dependent upon the specific facts of a given situation," and "not one on which we would exercise our discretion to address on the merits."[11] (*Giles*, *supra*, 100 Cal.App.4th at p. 228.) Father concedes that even a limited disclosure of a person's child welfare history could be "uncomfortable" for that person, implicitly recognizing the need for resolution on a case-by-case basis.

Furthermore, assuming the disputed issue is not moot, we would still affirm the juvenile court's detention order in this case. "The harmless error analysis applies in juvenile dependency proceedings even where the error is of constitutional dimension." (*In re J.P.* (2017) 15 Cal.App.5th 789, 798.)

Here, regardless of whether the Agency had disclosed maternal cousin or paternal grandmother's CACI information,[12] A.G. could not have been

---

[11]  Notably, the Agency does not argue that CACI reports may *never* be disclosed. The Agency's position is that a section 827 petition and hearing is required so that affected individuals may be notified, and individuals' privacy interests may be carefully considered, prior to disclosure.

[12]  To be clear, we have not located a provision within the CANRA (Pen. Code, § 11164 et seq.) regarding the Agency's ability to divulge the relatives' CACI reports in this context, and reports of child abuse implicate not only the

placed with them on an emergency basis. For example, prior to an emergency placement, all adults living in a prospective home must clear a criminal records check, for which the Agency is required to collect their identifying information. (Welf. & Inst. Code, § 361.4; Cal. Code Regs., tit. 22, § 89319 ["All persons subject to criminal record review shall obtain a criminal record clearance from the California Department of Social Services or county as appropriate."].) At the time of hearing, the relatives had not provided sufficient information regarding the adults living in their homes for the Agency to complete its section 361.4 assessment. Thus, the juvenile court was independently justified in declining to detain A.G. with relatives. (*N.V.*, *supra*, 189 Cal.App.4th at p. 31 [error in excluding maternal grandmother's child welfare history from evidence was harmless where the children could not have been placed with her anyway].)

_____

underlying children's privacy rights, but also that of the relatives. (Cf. Pen. Code, § 11170, subd. (f)(1) & (2) [a person may determine if he or she is listed in the CACI, but "no person or agency shall require or request" that person to furnish a copy of his or her own record].)

DISPOSITION

The juvenile court's February order is affirmed.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


HUFFMAN, J.