[No. B199111. Second Dist., Div. Eight. Sept. 5, 2007.]

R.S., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES et al., Real Parties in Interest.

1264

COUNSEL

Claire Boudov for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Owen L. Gallagher, Principal Deputy County Counsel, for Real Party in Interest Los Angeles County Department of Children and Family Services.

OPINION

**RUBIN, J.—**

## INTRODUCTION

Petitioner R.S. (father) is the parent of E.S. (born November 2004), who is a dependent of the juvenile court. Under California Rules of Court, rule 8.452, father filed a petition for extraordinary relief seeking review of the juvenile court's April 23, 2007 ruling denying him family reunification services and setting a permanency planning hearing under Welfare and Institutions Code section 366.26.[1]

The juvenile court, apparently assuming father was a custodial parent, denied reunification services under section 361.5. We conclude that as father was not a custodial parent, the court should have considered the case under a different code provision, section 361.2, which is applicable to noncustodial parents. Accordingly, we grant the petition and direct the court to reconsider the case under section 361.2.

## PROCEDURAL BACKGROUND AND FACTS

Father, as well as real party in interest Los Angeles County Department of Children and Family Services (DCFS), set out in their briefs the complete history of the juvenile court proceedings, a history that does not require repetition except when necessary to address the specific claims for extraordinary relief.

---

[1] All further statutory references are to the Welfare and Institutions Code.

Father has two children with mother D.R.: Jr. and E.S. In October 2001, Jr., then a 13-month-old boy, suffered a skull fracture and serious swelling of the brain. Father and mother did not take Jr. for medical treatment until seven days later, when Jr. was hospitalized. Physicians determined the injuries resulted from the parents' unreasonable acts or negligence. Consequently, DCFS filed a section 300 petition on behalf of Jr. and his half sister J.R., including allegations that the parents had a history of domestic violence. Mother initially admitted to the domestic violence allegations and later stated about father, "He'll kill me, he said he would if I told anyone." The parents were ordered to participate in parent education and individual counseling. Both parents continuously denied the need for any intervention, specifically stated they never did anything that could be dangerous to their children, and were uncooperative in achieving reunification. As a result, the parents failed to reunify with Jr. and J.R., and in July 2004 their parental rights were terminated. We affirmed the juvenile court's order. (*In re Jasmine R.* (Feb. 9, 2005, B176524) [nonpub. opn.]; see also *Diana R. v. Superior Court* (Dec. 19, 2003, B169130) [nonpub. opn.].)

In November 2004, while mother and father were still living together, mother gave birth to E.S. At some point in time, father moved out of the home.[2] In October 2006, mother left E.S. unattended, and he sustained second degree burns from a clothes iron mother had left on the floor. Even though mother knew about the injuries, she failed to seek medical attention. E.S. also ran into the living room sofa, cutting his lip on some exposed upholstery staples. Mother later became upset and threw E.S. onto the couch while angrily yelling at him. He bounced off the sofa and hit his head on a table. While police were investigating these events and attempting to take E.S. into protective custody, mother wrapped herself around E.S., threatened to take her own life, and fell unconscious. She was placed in restraints and taken away for a mental health evaluation.

DCFS's October 2006 dependency petition alleged, among other things, mother's physical abuse, the parents' prior termination of parental rights with respect to E.S.'s siblings, and father's history of domestic violence. Father told the social worker that he had not seen mother for over a year and, even though he was not financially supporting E.S. and did not have a job, he wanted custody of E.S. At the detention hearing, the juvenile court initially ordered reunification services to both parents, and they were granted moni-

---

[2] It is unclear from the record when father left the family residence. Father's trial counsel represented that mother and father lived together "for several months" after E.S.'s birth, but had been separated "for over a year and a half or, maybe, even two years" by April 2007.

tored visitation three times per week, although not at the same time. E.S. was later placed with a paternal aunt, B.F., who was already the adoptive mother of E.S.'s older siblings.

The social worker reported in November 2006 that mother admitted a history of domestic violence with father. She said, "Yes, it's true. He's an abusive guy. He was abusive with me. He would hit me and abuse me a lot. That's why I have a restraining order against him now." Father admitted he had not been involved in E.S.'s life, he denied any domestic violence, and he also acknowledged that he had not completed a domestic violence program. DCFS reported that father indicated he now lived with his wife and two-month-old biological daughter and again said he wanted custody of his son. E.S. was thriving in B.F.'s home with his siblings. B.F. expressed an interest in adopting him.

In connection with the jurisdictional hearing, the social worker recommended that under section 361.5, subdivision (b)(10) and (11), father not be granted reunification services because he had failed to reunify with E.S.'s older brother, had failed to comply with the case plan, and thereafter had not made reasonable efforts to treat the problems that led to the brother's removal. The court sustained an amended petition under section 300, subdivisions (b) and (j). DCFS was ordered to review the prior dependency case concerning Jr. and provide a supplemental report on the status of father's current counseling, if any.

DCFS reported in February 2007 that during the prior dependency case, father and mother had been ordered to complete parenting education classes and individual counseling to address domestic violence issues. Father had completed a 10-week parenting course, but had enrolled in individual counseling only after family reunification services had been terminated. Father did not successfully complete the program. As to the present case, DCFS reported father's telephone number was out of service, he had not provided a new number, and he had not kept in touch with the social worker since E.S.'s detention. Father had not visited E.S. during the past three weeks. The DCFS report recommended that family reunification services not be offered to father.

At the disposition hearing, which began in February 2007, father testified that he had "no idea" why the court made the earlier domestic violence counseling order because there had been no domestic violence. Father

admitted he had not completed a domestic violence counseling program. Father said he had told the social worker there had been no prior domestic violence between him and mother, and there were still no issues about it.

Father testified he had no contact with E.S. prior to October 2006, although he had visited him in January and February 2007. He had enrolled in a counseling program after the filing of E.S.'s case, but was no longer in the program because it had been cancelled. Father did not testify that he wanted custody or was seeking custody of E.S.

Mother testified that she and father were living together when E.S. was born but that she had to move to a women's shelter because father "hit me and, when he get[s] mad, [he takes] it out on me." Father hit her "a lot of time[s]." She also testified that father had cut her head with a soda bottle and that prior to E.S.'s birth he had thrown a bottle at her daughter J.R.

The social worker testified she had spoken to father only once on the telephone, in November 2006. Father's phone number was no longer working. Even though she had advised him to keep in contact with DCFS, she had received no messages from him, and he had not provided a new phone number.[3] She also confirmed that father had not completed a domestic violence program during the prior dependency case and had simply denied any history of domestic violence.

On April 23, 2007, at the continued disposition hearing, the juvenile court denied father reunification services under section 361.5, subdivision (b)(10) and (11), because of his unresolved history of domestic violence. The court found father "has not addressed that domestic violence problem. He has indicated to the social worker he does not believe he had a domestic violence problem, and he hasn't attended any kind of domestic violence counseling. He has visited the child but, more recently, it has been very limited, and he has not kept in contact with [DCFS]. [¶] [DCFS] has been unable to make contact with him even though they have left numerous messages for him. Further, I find that by clear and convincing evidence that 361.5(b)(10) and (11) apply in this case and that he hasn't made the reasonable efforts to correct the problem . . . ." The court also denied reunification services to mother and scheduled a permanent planning hearing pursuant to section 366.26.

Father challenges the ruling.

---

[3] During his testimony, father said he had called the social worker but she was "always busy," so he left messages "about four times." He also admitted he had changed telephone numbers "a few months ago" and that he didn't know what number the social worker had for him.

## THE PARTIES' CONTENTIONS

Father contends there was no substantial evidence to support the juvenile court's finding that he had failed, under section 361.5, subdivision (b)(10) and (11), to make reasonable efforts to treat the problems that led to the removal of his older child, Jr. DCFS's response takes a different tack, arguing that father, DCFS, and the juvenile court were all mistaken in their conclusion that section 361.5 applied to this case. DCFS argues section 361.5 does not apply because it addresses custodial parents only. Since at no time after DCFS's intervention did father have custody of E.S. and father did not ask the court for custody, DCFS concludes section 361.5 is immaterial. Instead, it is section *361.2* that governs this proceeding, and substantial evidence supports the denial of reunification services under that provision even if the trial court's ruling did not rely on that statute

We agree with DCFS, in part: section 361.2 is the applicable provision as father was a noncustodial parent. However, because the record is not clear whether father was in fact seeking custody of E.S., we conclude that the trial court should in the first instance decide the case under that section. Consequently, we grant the petition.[4]

## DISCUSSION

Typically, when a child is removed from a parent, section 361.5 mandates that the child and parent be provided 12 months of child welfare services in order to facilitate family reunification, which may be extended to a maximum of 18 months. (§ 361.5, subd. (a).) However, in specified cases, section 361.5, subdivision (b), precludes the granting of reunification services. As one court has stated, "In enacting section 361.5, subdivision (b), the Legislature has recognized that, notwithstanding the crucial role of reunification services when a minor is removed from the home, it may be useless under certain circumstances to provide services. [Citations.] 'Section 361.5 reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody. The

---

[4] Father's counsel did not file a reply brief, so we do not have the benefit of an argument refuting DCFS's position. However, we conclude on our own that we should not undertake a substantial evidence review. Because of the misimpression of all parties and the juvenile court, the court did not have the opportunity to decide the case under section 361.2. It should be permitted to do so. At the outset, the juvenile court should determine whether father is actually seeking custody of E.S., as the record is not clear. As we explain in the text, if father is not seeking custody, he is not entitled to reunification services. (See *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450–1451, 1454 [45 Cal.Rptr.3d 445]; *Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 627–628 [53 Cal.Rptr.2d 41] (*Robert L.*); *In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856 [34 Cal.Rptr.2d 271] (*Terry H.*).)

exceptions in subdivision (b) to the general mandate of providing reunification services "demonstrate a legislative determination that in certain situations, attempts to facilitate reunification do not serve and protect the child's interest." [Citation.]' [Citation.]" (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1137 [98 Cal.Rptr.2d 715], citing *In re Joshua M.* (1998) 66 Cal.App.4th 458, 470 [78 Cal.Rptr.2d 110].)

██ Of course, that reunification services are mandated or specifically excluded under section 361.5 assumes the parent in fact had custody of the child at the time of detention. "Section 361.5 is clearly directed to the custodial parent or parents. The section comes into play 'whenever a minor is removed from a parent's or guardian's custody . . . .' (§ 361.5, subd. (a).) There can be no removal of custody from a parent who does not have custody in the first place. . . . Section 361.5 is a generic statute addressing a basic situation in juvenile dependency actions, i.e., the removal of a child from the caretaker's custody and the goal of reunifying the child with the caretaker through the provision of reunification services. It does not, by its terms, encompass the situation of the noncustodial parent. Section 361.2 addresses the situation of the noncustodial parent and whether reunification services should be provided to that parent." (*Terry H., supra,* 27 Cal.App.4th at p. 1856; see also *In re Janee W., supra,* 140 Cal.App.4th at pp. 1450–1451, 1454.)

██ "Welfare and Institutions Code section 361.2 deals specifically with the removal of a child from a custodial parent when there also exists a noncustodial parent. 'When a court orders removal of a minor pursuant to Section 361, the court shall first determine whether there is a parent of the minor, with whom the minor was not residing at the time that the events or conditions arose that brought the minor within the provisions of Section 300, *who desires to assume custody of the minor.* If such a parent requests custody the court shall place the minor with the parent unless it finds that placement with that parent would be detrimental to the minor.' (Welf. & Inst. Code, § 361.2, subd. (a).) . . . [¶] . . . Section 361.5 requires the provision of services to parents 'for the purpose of facilitating reunification of the family . . . .' *The provision of services to a noncustodial parent who does not seek custody of the children does not in any way serve this purpose.* The fact that section 361.2 permits the juvenile court to place a child with a previously noncustodial parent and deny services to the previously custodial parent demonstrates that reunification services are not required to be provided to a parent who will not be taking custody of the children. This integrated statutory scheme reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of the children to parental custody. *Provision of services to a noncustodial parent who does not seek custody will not serve this purpose, and therefore such services are not*

*required to be offered or provided."* (*Robert L., supra*, 45 Cal.App.4th at pp. 627–628, italics added.)

The uncontroverted evidence before the juvenile court was that father was indeed a noncustodial parent. At the time of E.S.'s removal from mother's home, father and mother were no longer living together. Father admitted that he had not seen E.S. for more than one year and did not contribute financially to his welfare. Father's counsel confirmed to the juvenile court that father had left mother and E.S. just several months after his birth and had been separated for almost two years by the time of the disposition hearing. Father also indicated he was now married and living together with his wife and new baby. A restraining order barred father from contacting mother. Because father was a noncustodial parent, the juvenile court was bound to apply the provisions of section 361.2, not section 361.5.

Under section 361.2, father is entitled, as a noncustodial parent, to custody of E.S. unless the court finds "that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) If the court awards custody to the noncustodial parent subject to the supervision of the court, pursuant to section 361.2, subdivision (b)(3), the court may offer reunification services to either the custodial or noncustodial parent, or both. Under *Robert L.* and *Terry H.*, the noncustodial parent is not entitled to reunification services if he or she does not seek custody and, even if that parent does seek custody, the court must determine whether reunification is appropriate.

DCFS argues that even though the juvenile court applied the wrong statute, we should nonetheless affirm the order denying reunification services because father never formally told the juvenile court he desired custody of E.S. We are not persuaded that the record is so clear. It is true that, during the hearings, neither father nor his counsel specifically advised the court that father wanted custody of E.S. But DCFS reported in October 25, 2006, that father told the social worker he "now wants custody of his child." DCFS again stated in its November 14, 2006 report that father "expressed an interest in having custody of his son." The failure of father to ask for custody in open court understandably interfered with the trial judge addressing the predicate issue. Nevertheless, there was evidence in the record indicating that father was seeking custody. Not until the juvenile court determines whether or not father is seeking custody will it be able to determine whether father is entitled to placement or reunification services.[5]

---

[5] We express no opinion as to whether E.S. should be placed with father or whether father is entitled to reunification services.

## DISPOSITION

The petition for an extraordinary writ is granted. The juvenile court is ordered to (1) vacate its order of April 23, 2007, denying reunification services under section 361.5 and, instead, (2) schedule a new hearing to (a) determine if father is seeking custody of E.S. and, if so, (b) make the appropriate findings under section 361.2. As our opinion vacates the order setting the section 366.26 hearing, our previous order temporarily staying the section 366.26 hearing is dissolved. This opinion is final forthwith as to this court under rule 8.264 of the California Rules of Court.

Cooper, P. J., and Boland, J., concurred.