Filed 8/29/13  In re Maxwell J. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Maxwell J. et al., Persons Coming Under the Juvenile Court Law. | B245713 (Los Angeles County Super. Ct. No. CK23029) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MALINDA J., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephen C. Marpet, Juvenile Court Referee.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

* * * * * *

Malinda J. (Mother) appeals from the juvenile court's jurisdictional and dispositional orders and findings of November 16, 2012, which include orders declaring minors Matthew, Maxwell, and M., dependents of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b), and (j).[1] The court placed the children with Marcus J. (Father) and terminated the dependency case with a family order. Mother contends the evidence was insufficient to support dependency jurisdiction and removal from her custody. She also contends the court abused its discretion when it terminated dependency jurisdiction.

Substantial evidence supports the juvenile court's findings. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

This case first came to the attention of the Los Angeles County Department of Children and Family Services (the Department) on May 5, 2012, as a result of allegations that Matthew[2] (born 1999) had been physically abused. The incident occurred on April 30, 2012, when Matthew and his siblings, Maxwell (born 2000), and M. (born 2001), were in a car with Mother. Mother became upset and punched Matthew in the mouth and split his lip. When contacted at her home on May 6, 2012, Mother was upset and uncooperative with the Department's social worker (CSW) assigned to the case. Mother stated she was under a lot of stress. She and Father[3] were going through a divorce and she worked two jobs because Father's child support was not sufficient. Mother claimed Father was uncooperative and allowed the children to misbehave when they visited with him. She stated all of the children were disrespectful to her when they returned from visiting Father. On the day of the incident, Matthew was fighting with his sister M. over loose change. She "smacked" him in the mouth and he began to bleed.

---

[1]     Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]     Matthew is not a party to this appeal.

[3]     Father is not a party to this appeal.

Matthew ran from the car. His paternal grandfather picked him up and took him to the police station.

On May 6, 2012, the CSW interviewed the children. Matthew said he was arguing with his sister when Mother hit his mouth and "busted his lip open." He said Mother had not hit him since that incident. He was afraid of Mother and wanted to live with Father because Father did not hit or hurt him. Maxwell said he did not see the incident on April 30. Mother sometimes gave him a "little smack" and he was a "little" afraid of her. He liked to visit Father because it was fun there. M. said she was in the store when the incident occurred and did not see anything. She said Mother did not hit or hurt her and she liked living with her. She also liked to visit Father and had fun there.

On May 21, 2012, the CSW conducted follow-up interviews. Mother stated she had problems with Matthew and in the past he punched her in the face and told her he hated her. Mother reported that Maxwell was receiving special education services at school but she did not know his diagnosis. M. recalled the incident on April 30 and said Mother reached back and took the coins from Matthew. She said Mother did not hit him and Matthew caused a lot of problems.

On June 24, 2012, Mother was arrested for physical abuse of Matthew and charged with a misdemeanor pursuant to Penal Code section 273a, subdivision (b). Mother told the CSW that Matthew refused to go to church and wanted to go to his grandparents' house. She grabbed him from behind when he tried to leave on his bicycle. The police report indicated Matthew had "a fresh deep bloody scratch to the back of his neck approximately six inches long." The CSW observed the scratch "clearly was done by fingernails." The CSW asked Mother about an incident earlier that week when Mother was arrested for assault and battery on Father's ex-girlfriend. Mother refused to talk about the incident with Father's ex-girlfriend and stated it had nothing to do with her problem with Matthew. M. told the CSW she did not witness the incident. She said the children spend most of the time with Father and their grandparents. She tried to stay neutral about her parents' relationship but Mother tried to convince her to take her side.

3

On July 11, 2012, Mother, Father and the children attended a team decisionmaking meeting. Mother accused Father of causing all the problems and refused to accept responsibility for her actions regarding Matthew. She called Father derogatory names and made accusations concerning his drinking and not taking Prozac. She was uncooperative and refused to provide her current address.

On July 17, 2012, the Department filed a dependency petition (§ 300, subds. (a), (b) & (j)) on behalf of the three children. The petition alleged that Mother physically abused Matthew on April 30, 2012 and on June 24, 2012. Father requested custody of all three children and told the CSW he was willing to comply with the Department's and the court's terms and conditions. At the detention hearing held on July 17, 2012, Mother requested that Maxwell and M. be released to her care. The juvenile court denied Mother's request and ordered the children released to Father. The juvenile court ordered family reunification services for Mother and monitored visitation.

In the September 6, 2012 jurisdiction and disposition report, the Department indicated that Mother had an extensive history with the Department dating back to 1996, including physical abuse of older half siblings. In May 1997, Mother's four children at that time were declared dependents of the court. In 2004, Matthew, Maxwell, M., and two of their half siblings became dependents of the court following allegations that Mother hit one of the half siblings with a belt. Mother was arrested in 2005 and in 2008 for spousal battery against Father. Mother told the CSW she was currently renting a room but would not provide the address. She claimed Father turned the children against her. She denied scratching Matthew and said Father was capable of doing it to Matthew and blaming her. Father told the CSW that in June 2012, Mother was arrested after she broke into his ex-girlfriend's house and started fighting with her. The incident when Mother scratched Matthew occurred on the day she was released from custody. The police reports from the incidents on April 30, 2012 and June 24, 2012 were attached to the jurisdiction and disposition report. The juvenile court set the matter for an adjudication hearing on November 16, 2012.

4

The Department submitted a progress report prior to the adjudication hearing. The children were living with Father and their paternal grandparents. The report indicated there was ongoing tension between the parents. Father reported that Mother was harassing him. Mother was calling and texting Father up to 22 times each day. Matthew liked living with Father and never wanted to see Mother again. Maxwell did not want to live with Mother and preferred to live with Father. Maxwell said he tried to "be nice" so that Mother would not be "mean" to him. M. missed living with Mother and wanted to reside with her when possible. M. felt comfortable and safe living with Father. The Department recommended the children be declared dependents of the court and remain with Father and that family maintenance services and counseling be provided for the entire family.

At the disposition hearing on November 16, 2012, Mother requested that the abuse of sibling allegation filed pursuant to section 300, subdivision (j) be dismissed. The juvenile court stated the evidence clearly indicated the children were physically abused. The court sustained the petition as amended[4] under section 300, subdivisions (a), (b), and (j), based on Mother's physical abuse of Matthew, which placed all of the children at risk of physical and emotional harm. Counsel for the children joined in Father's request that the matter be terminated with a family law order. The Department, joined by Mother, requested a continuance. The juvenile court indicated that pursuant to section 361.5, subdivision (b)(1), it was terminating jurisdiction with a family law order granting Father sole legal and physical custody. The court ordered monitored visitation for Mother.

## DISCUSSION

### Contentions

Mother contends there was insufficient evidence to support a finding that M. was described by section 300. Mother also contends the juvenile court erred when it ordered M. removed from Mother's custody because M. was not at risk of harm and there were

---

[4]    The court struck language referring to Father's knowledge of the abuse and failure to protect the children from the allegations.

5

less drastic alternatives available.  Lastly, Mother contends the juvenile court abused its discretion when it terminated dependency jurisdiction over Maxwell and M.

**Standard of Review**

In reviewing the jurisdictional findings of the juvenile court, "we look to see if substantial evidence, contradicted or uncontradicted, supports them.  [Citation.]  In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."  (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)  If supported by substantial evidence, we must uphold the judgment or findings, even though substantial evidence to the contrary may also exist, and the juvenile court might have reached a different conclusion had it determined the facts and weighed credibility differently.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

We also review the court's dispositional order placing the children with Father under the substantial evidence standard.  (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569.)

The juvenile court's discretion to terminate jurisdiction or continue its supervision is very broad and the standard of review is abuse of discretion.  (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.)

**Principles Applicable to Section 300**

"The purpose of section 300 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.'  [Citation.]"  (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Jurisdiction over a child under section 300 may be based on there being "a substantial risk that the child will suffer . . . . serious future injury based on . . . a history of repeated inflictions of injuries on the child or the child's siblings . . . which indicate the child is at risk of serious physical harm" (§ 300, subd. (a)); if there is "a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child" (§ 300, subd. (b)); or if the "child's sibling has been abused or neglected, as defined in subdivisions [(a) or (b)], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions" (§ 300, subd. (j)).

**Substantial Evidence Supported the Juvenile Court's Finding That M. Was Described by Section 300**

The juvenile court found true two separate instances of physical abuse perpetrated by Mother on Matthew and took jurisdiction over Matthew and his siblings, Maxwell and M. Mother only challenges the jurisdictional finding as to M. Since M. said she missed Mother and would like to live with her and there is no evidence Mother ever harmed M., Mother contends that she poses no risk to M.

It is true there was no evidence at the jurisdictional hearing that Mother had harmed M. But the court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) The juvenile court's decision was not based on Mother's relationship with M. but on her relationship with Matthew and her history of inflicting injury on him. The issue was whether at the time of the jurisdictional hearing, Mother's treatment of Matthew placed M. at serious risk of harm. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) Mother's abuse of Matthew stemmed from her inability to control her anger. Mother was arrested for assault and battery on Father's ex-girlfriend the day before she assaulted Matthew. She punched Matthew in the mouth when he argued with his sister and scratched him on the neck when he wanted to go to his grandparents' house. The circumstances did not warrant Mother's disproportionate reaction. The evidence also showed that Mother had a longstanding history of anger

7

issues and violence not related solely to Matthew. In addition to assaulting Father's ex-girlfriend in 2012, Mother struck M.'s half sibling with a belt in 2004. Mother was arrested in 2005 and in 2008 for spousal battery against Father. Mother displayed a history of violence towards others which the juvenile court could consider. (See *In re S.O.* (2002) 103 Cal.App.4th 453, 461, citing *In re Rocco M., supra,* at p. 824 ["'[P]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue'"].)

Based on statements made by M. and Maxwell, the juvenile court could easily infer M. was in fear of Mother. Maxwell said he tried to "be nice" so Mother would not be "mean" to him. Mother occasionally gave him a "little smack" and he was afraid of her. M. told the CSW that she tried to remain neutral about her parents' relationship but Mother tried to convince her to take Mother's side, and there was evidence in the record of that influence. The incident in the car when Mother struck Matthew in the mouth resulted from Matthew arguing with M. over loose change but M. initially told the CSW she was inside the store and did not see anything. A few weeks later M. told the CSW she remembered the incident and Mother did not hit Matthew.

On appeal, we must defer to the factual determinations of the trier of fact. The juvenile court weighed the evidence of Mother's inability to care for and protect the children. It is not our function to redetermine the facts. The juvenile court found the evidence indicated "clearly, that the children were physically abused." Our review of the evidence shows that the juvenile court's decision was supported by substantial evidence such that a reasonable trier of fact could make such findings, and thus we must affirm the determination of the juvenile court. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 198–200.)

**Substantial Evidence Supported the Juvenile Court's Order Removing M. From the Home of Mother**

Mother also contends there is insufficient evidence to support the juvenile court's decision to remove M. from her care. Again, we disagree.

Pursuant to section 361, subdivision (c)(1), the juvenile court may remove a dependent child from his parents' custody upon clear and convincing evidence of a substantial danger to the child's physical health or well-being if there are no other reasonable means to protect the child. Such an order "is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citations.]" (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, overruled on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 736.)

The standard has obvious parallels to the jurisdictional issue discussed above, and the juvenile court's jurisdictional findings are prima facie evidence M. cannot safely remain in Mother's home. (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146 (*Hailey T.*).) However, Mother argues M.'s removal was unjustified because she could have safely remained in Mother's care and there were less drastic alternatives available. In so arguing, Mother relies on *Hailey T.*

In *Hailey T.,* the juvenile court's removal order with respect to a four-year-old girl was reversed because the cause of her infant brother's injuries were the subject of sharp dispute, her parents had a good relationship, they did not have any substance abuse problems and "there was no evidence [they] suffered from mental health conditions, developmental delays or other social issues that often are at the root of dependency cases and might place children at continuing risk in the home." (*Hailey T., supra*, 212 Cal.App.4th at p. 147.)

In contrast to the parents in *Hailey T.,* Mother has an extensive history of child abuse and anger outbursts. She was uncooperative with the Department, refusing to provide her address, failing to acknowledge responsibility for her actions towards Matthew, and even going as far as suggesting she was "set up" by Matthew because he did not want to live with her. However, the striking difference between the cases concerns the infliction of injury. In *Hailey T.*, there was no evidence that either parent

9

ever inflicted any injury on the four-year-old, and the only evidence that either parent inflicted any injuries on the infant was disputed expert evidence that the four-year-old could not have done so. (*Hailey T., supra*, 212 Cal.App.4th at p. 148.) The police report tentatively concluded that the four-year-old had accidentally caused the infant's injuries. (*Id.* at p. 143.) Here, there was no doubt Mother was responsible for Matthew's injuries. In light of the prior instances of child abuse and other instances involving Mother's violent conduct, the juvenile court was justified in removing M. from Mother's care. Because the court's removal order enjoys substantial evidentiary support, we will not disturb it.

**Juvenile Court Did Not Abuse Its Discretion When It Terminated the Dependency Case with a Family Law Order**

Mother contends the juvenile court abused its discretion when it terminated jurisdiction without determining whether placement with Father would be detrimental to Maxwell and M. The Department takes no position on this issue. Since there was no evidence of detriment to the children in Father's care, Mother's contention fails.

The juvenile court stated, "Pursuant to Welfare and Institutions Code section 361.5 (b)(1)[5] the court is terminating jurisdiction today with a family law order of sole legal, sole physical and primary to Father." It appears the court misspoke and was actually referring to section 361.2,[6] subdivision (b)(1), the code provision applicable to noncustodial parents.

---

[5]     Section 361.5, subdivision (b)(1) states that "[r]eunification services need not be provided to a parent or guardian . . . when the court finds, by clear and convincing evidence, . . . [¶] [t]hat the whereabouts of the parent or guardian is unknown."

[6]     Section 361.2, subdivision (a) states, "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." Section 361.2,

10

Under section 361.2, when, as is the case here, Father wanted and requested custody of the children, the juvenile court "*shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a), italics added.) "Shall" is mandatory. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443.) Thus, when a noncustodial parent requests custody, the court must place the children with him or her. "'A court's ruling under [section 361.2(a)] that a child should not be placed with a noncustodial, nonoffending parent requires a finding of detriment . . . [Citation.]' [Citation.]" (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 699–700; see *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1271.) The reason is that "a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.' [Citations.]" (*In re Isayah C., supra,* at p. 697.) Here, because Father as the noncustodial parent requested custody, the court would have needed to make a detriment finding if it decided not to place the children with Father.

Mother relies on *In re V.F.* (2007) 157 Cal.App.4th 962. In that case, the father was a noncustodial parent who was incarcerated at the time the child came into the dependency system as a result of the mother's neglect and drug use. The only allegation of the petition naming the father was one made under section 300, subdivision (g), relating to his incarceration and inability to arrange adequate care for the children. (*In re V.F., supra,* at p. 966.) At the disposition hearing, custody was removed from both

_____

subdivision (b)(1) states that if the court places the child with that parent it may "[o]rder that the parent become legal and physical custodian of the child," "provide reasonable visitation by the noncustodial parent" and "[t]he court shall then terminate its jurisdiction over the child." Section 361.2, subdivision (c) requires the court to make a finding either in writing or on the record of the basis for its determination under subdivision (a).

parents pursuant to section 361, subdivision (c), and the father was denied services due to his incarceration. (*In re V.F., supra,* at p. 967.)

On appeal, the father argued that because the dependency petition was based only on the conduct of the children's mother, he should have been treated as the nonoffending parent and allowed to retain custody of the children under section 361, subdivision (c)(1). (*In re V.F., supra,* 157 Cal.App.4th at pp. 966–967.) The reviewing court agreed, holding that because the father was not the custodial parent, the court should have considered the case under section 361.2, stating "If a noncustodial parent requests custody of a child, the trial court must determine whether placement with that parent would be detrimental to the child. (§ 361.2, subd. (a).)" (*In re V.F., supra,* at p. 970.)

The juvenile court in *In re V.F.* did not consider whether placement with the noncustodial *incarcerated* parent would be detrimental to the children under section 361.2, subdivision (a). *In re V.F.* noted that, while the record before it arguably supported a finding of detriment under section 361.2, "the better practice is to remand the matter to the trial court where that court has not considered the facts within the appropriate statutory provision." (*In re V.F., supra,* 157 Cal.App.4th at p. 973.)

Here, all of the children were placed with Father. Where the statutory directive for placement with the nonoffending parent is followed, the only remaining issue is whether jurisdiction should be terminated. Based on the record in this case, there is no reasonable probability that had the trial court made express findings pursuant to section 361.2, subdivision (c), as interpreted in *In re V.F.,* it would not have terminated jurisdiction. Thus, remand for an express statement of reasons would constitute an idle act. (See Civ. Code, § 3532; *Letitia v. Superior Court* (2000) 81 Cal.App.4th 1009, 1016.)

Given that Maxwell and M. had been placed with Father and the juvenile court did not have concerns regarding their care, the juvenile court did not abuse its discretion in terminating jurisdiction with a family law order for custody and visitation.

## DISPOSITION

The orders of the juvenile court are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *
                                        FERNS

We concur:


_____, P. J.
          BOREN


_____, J.
          ASHMANN-GERST

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.