Filed 9/2/15  In re Jasmine H. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JASMINE H. et al., Persons Coming Under the Juvenile Court Law. | B255796 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LYNETTE L., Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK79473) |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Mother and appellant Lynette L. appeals from dispositional orders of the juvenile court granting father, Christopher H., sole physical and legal custody of Jasmine H. and L. H. and denying mother reunification services, under Welfare and Institutions Code section 361.2.[1] Mother contends that the court abused its discretion by giving father sole custody of the children. She also contends there was insufficient evidence to support issuance of protective custody and arrest warrants. We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has four children: Jasmine H. (13), L. H. (7), Asia G. (15), and Lyric B. (2).[2] Christopher H. is Jasmine's and L.'s father. Glen B. is Lyric's father.[3]

Mother had two reported incidents of domestic violence with Glen B. The first occurred on October 17, 2009, when Glen B. pointed a gun at mother and Jasmine. As a result, Jasmine, L., and Asia were declared dependents of the juvenile court in February 2010, and the court ordered "no contact by" Glen B. In April 2011, joint legal custody of the children was granted to mother and the respective fathers, and jurisdiction was terminated.

The second incident of domestic violence occurred on May 9, 2013. Glen B. broke into mother's home with a bat and threatened mother and Jasmine with it. Glen B. grabbed mother by the arms. Mother called Christopher H. for help, and he fought with Glen B. As a result, Christopher H.'s mouth and lower lip area were swollen and red, and Glen B. also had minor injuries. When Jasmine tried to protect mother, Glen B. threatened to hit "her" with the bat. Jasmine was scared of Glen B. L. was also scared, and she cried because she didn't know what was going to happen.[4] Asia was not home

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Ages are stated as of the time the petition was filed.

[3] Asia's father is Aaron G.

[4] Mother denied that the children were exposed to the confrontation.

2

during the incident, but she witnessed other verbal arguments between mother and Glen B., who threatened to hurt mother, although he never threatened to hurt the children. Glen B. once threw stuff at mother, and Asia and her siblings pushed Glen B. away from her.[5]

Based on the May 9 incident, a dependency petition was filed on October 9, 2013 under section 300 alleging that the children were at risk of serious physical harm and a failure to protect (§ 300, subds. (a), (b)). At the detention hearing, the court issued protective custody and arrest warrants for mother, who was at large with the children. Mother remained at large with the children as of November 7, 2013.

As a result of the arrest warrant, mother was in court on December 10, 2013. The arrest warrant was recalled. Mother denied knowing where the children were. She last saw them on December 4 at her cousin's house, whose address was unknown to mother. Before taking the children to her cousin's house, mother and the children were with a different cousin, whose name mother claimed not to know. The juvenile court found that mother was "refusing to answer the questions honestly and completely" and to provide information so the children could be located. The court found mother in contempt and remanded her into custody. The protective custody warrants remained in full force and effect.

Mother continued to deny having information regarding the children at a contempt hearing, on December 12, 2013. The juvenile court again found mother in contempt and remanded her back into custody. Glen B. represented that mother had dropped off Lyric to him the day before mother was arrested.

---

[5]    Glen B. denied breaking into the house; it was his house and he had a key. According to Glen B., Christopher H. assaulted him. Mother and Jasmine hit Glen B. with a bat to get him off of Christopher H. Glen B. denied ever hitting mother in their history together, although she hit him once with a gun.
    Glen B. has other children. Those children were the subject of a dependency petition based on their mother's assault on Glen B.

At the next hearing on December 16, 2013, the children were present and the juvenile court recalled the protective custody warrants and released mother. The court detained the children. Jasmine and L. were placed with their father, Christopher H.[6] Family reunification services were not ordered for Jasmine and L.

The department, in its January 31, 2014 jurisdiction/disposition report, recommended, among other things, that Christopher H. be granted sole legal and physical custody of his daughters and that jurisdiction over them be terminated.

At the disposition hearing on April 15, 2014, after Glen B. testified and mother declined to do so, the juvenile court declared the children to be dependents of the court (§ 300, subds. (a), (j)) and found by clear and convincing evidence that there was a substantial danger to the children's physical and emotional well-being. The court granted Christopher H. sole legal and physical custody of Jasmine and L. and terminated jurisdiction as to them. (§ 361.2, subds. (a), (b).) Mother was allowed supervised visitation. Family reunification services were not provided to mother in connection with Jasmine and L.[7]

## DISCUSSION

**I.    The dispositional orders granting Christopher H. sole custody and denying reunification services.**

Mother contends that the juvenile court abused its discretion by giving Christopher H. sole legal and physical custody of Jasmine and L. and by not ordering reunification services for mother. The court did not abuse its discretion.

Section 361.2 allows a juvenile court to grant legal and physical custody of a child to the noncustodial parent. (*In re V.F.* (2007) 157 Cal.App.4th 962, 969; *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1270; *In re Erika W.* (1994) 28 Cal.App.4th 470,

---

[6]    Asia and Lyric were eventually placed with their grandmother. Family reunification services were ordered for them.

[7]    L. felt "good" about living with father and having monitored visits with mother, and Jasmine was "okay" with that scenario.

4

475.) The section thus provides that when a court orders removal of a child from a custodial parent, the court shall determine whether there is a noncustodial parent who desires to assume custody of the child. (§ 361.2, subd. (a).) If so, the court "shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (*Ibid*.) If the court places the child with the noncustodial parent, it may do one of three things: (1) grant that parent legal and physical custody of the child and terminate its jurisdiction over the minor (*id.*, subd. (b)(1)); (2) order that the parent assume custody of the minor subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months (*id.*, subd. (b)(2)); or (3) order that the parent assume custody of the minor subject to the supervision of the juvenile court (*id.*, subd. (b)(3)). Under the third option, the court "may" order reunification services for the parent from whom custody was removed, or for the parent assuming custody or for both parents. (*Ibid.*)

When making a custody determination, the juvenile court's focus and primary consideration must be the child's best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) We review such determinations for an abuse of discretion. (See *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179.)

Mother's argument that the trial court abused its discretion focuses on why she should retain custody of Jasmine and L.; for example, she raised her daughters, the first incident of domestic violence occurred five years ago, and mother has been attending domestic violence and parenting classes. Under section 361.2, however, the issue is whether placement with Christopher H. was detrimental to the girls' safety, protection, or physical and emotional well-being. Mother makes no argument as to that issue, and there is no evidence of such detriment. (See *R.S. v. Superior Court, supra,* 154 Cal.App.4th at p. 1271 [noncustodial parent is entitled to custody unless the court finds that the placement would be detrimental to the child].)

5

Instead, the evidence is that mother repeatedly exposed Jasmine and L., as well as her other children, to domestic violence. Mother's attempt to minimize the two reported incidents of domestic violence is unpersuasive. Both involved a weapon: during the October 17, 2009 incident Glen B. pointed a gun at mother and Jasmine, and during the May 9, 2013 incident he threatened mother and Jasmine with a bat. These were not isolated incidents. Asia witnessed arguments between mother and Glen B. and threats by Glen B. to hurt mother. Asia also said that Glen B. once threw stuff at mother, and the children protected mother. The detrimental effect of such domestic violence is well established. (See generally *In re R.C.* (2012) 210 Cal.App.4th 930, 941-942.)

Mother next contends that the juvenile court abused its discretion by failing to order reunification services for her. Section 361.2, however, does not provide for reunification services, where, as here, father was given sole custody and jurisdiction was terminated. (§ 361.2, subd. (b)(1).) "If the previously noncustodial parent [here, Christopher H.] can provide a safe and stable permanent home for the child and the evidence establishes that the other parent cannot, reunification services may be offered only to the previously *noncustodial* parent since this serves the Legislature's goals by placing the child in parental custody *and* providing for a safe and stable permanent home for the child." (*In re Erika W., supra,* 28 Cal.App.4th at p. 476; see also *R.S. v. Superior Court, supra,* 154 Cal.App.4th at p. 1270 [" 'The fact that section 361.2 permits the juvenile court to place a child with a previously noncustodial parent and deny services to the previously custodial parent demonstrates that reunification services are not required to be provided to a parent who will not be taking custody of the children' "].) Mother was not entitled to reunification services.

## II. The protective custody and arrest warrants.

Because mother was at large with the children, the juvenile court issued a protective custody warrant for the children (§ 340) and an arrest warrant for mother, who now contends there was insufficient evidence to support those warrants. We need not decide this issue, because it is moot. (See generally *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054-1055.) The petition was filed on October 9, 2013, and the

6

protective custody and arrest warrants were issued the same day. The arrest warrant was recalled on December 10, 2013. The protective custody warrants were recalled on December 16, 2013 and mother was released from custody. Mother does not demonstrate in what way her substantial rights would be affected by a decision on this issue.

We also reject mother's suggestion that the issuance of the warrants led to the contempt findings. The two were unrelated. Mother was found in contempt, under Code of Civil Procedure sections 1211 and 1219, because she willfully refused to answer questions about the whereabouts of the children. To the extent mother raises a claim of insufficiency of the evidence to support the contempt findings, the claim is meritless. (See generally *In re M.R.* (2013) 220 Cal.App.4th 49, 57 [contempt judgment is reviewed for substantial evidence].) At the initial contempt hearing, mother told the court she took the children to her cousin's house, but she could not remember her cousin's address or phone number. She also claimed not to know the name of another cousin with whom mother and the children had been staying. At a second hearing, mother said she had nothing further to say and had "no information as of today." At first she said she didn't know in what school the children were enrolled and then she said they went to an online school. Mother's testimony supports the contempt findings.

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

JONES, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.