Filed 11/18/22  In re Anthony E. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ANTHONY E., a Person Coming Under the Juvenile Court Law. | B315305 (Los Angeles County Super. Ct. No. 21CCJP03352B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>RENE E.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Robin R. Kesler, Judge Pro Tempore.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and William B. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Rene E. (father) appeals from the juvenile court's jurisdictional and dispositional orders in dependency proceedings for his six-year-old son.  He argues that (1) there is insufficient evidence to support the juvenile court's finding that he failed to protect his son from the mother's substance abuse and mental health problems; and (2) the juvenile court erred when it refused to give him custody of his son.  Substantial evidence supported the jurisdictional findings, and subsequent proceedings in the juvenile court have rendered father's second issue moot.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *Family*

Father and Amanda G. (mother) met in 2014.  Their son, Anthony, was born in October 2015.[1]  Father and mother never married, but were in a relationship and lived together for approximately five years.  During this time, father and mother

---

[1]     Mother has one other child—Arianna (born 2007)—by another father.  Father has two other children by other mothers.  These other children are not at issue in this appeal.

regularly engaged in "arguments and fights with stuff being broken." Father and mother eventually split up: Father moved to San Bernardino; mother, to Los Angeles with Anthony.

### B. *Mother's drug use*

Mother used crystal meth. She would go into the bathroom "for long periods of time" and emerge either "angry and arguing and talking to the ceiling" or "look[ing] like she was sleep walking." Mother would "stay awake for long periods of time" and "never sle[pt]." Father complained to mother's brother, Alfonso, that mother's methamphetamine use was a problem in their relationship.

### C. *Mother's mental health issues*

Beginning sometime in 2017, mother began "hearing voices and talking to herself," and started to blame "everything bad that ha[d] happened" on entities she identified only as "they" and "them." Mother called father "back-to-back" whenever she was having one of these mental health breakdowns, as father was "the only person able to settle her down" because he was "the only one who understands her." At times, mother's episodes got so bad that she would use a baseball bat to smash glass objects in the house and to make holes in the interior walls.

### D. *Events underlying dependency jurisdiction*

One day in June 2021, mother told Anthony and Arianna "to pack a bag because they were leaving and never coming back." Mother drove with the children to a motel in Palmdale. On the way there she drove erratically—at high rates of speed and through red lights—and, while hallucinating, threatened to drive the car off a cliff. Mother trashed the motel room, complained the motel did not have cameras, and then drove back to Los Angeles.

After mother returned, Alfonso, the maternal aunt Jessica,

and the maternal grandmother went to her home. Mother told them that she "had been doing meth" and had in fact been using methamphetamines since she was 15 years old, but she was going to stop. She left the room and returned with a glass pipe. Mother smashed the pipe on the table before handing it to Alfonso. Father had been working out of town during this incident, and upon his return, picked up mother and drove her to the beach because he thought "she needed some air" and they could "talk and walk for a while to calm her down."

In early July, mother was prescribed psychotropic medication at a psychiatric and chemical dependency treatment center. Mother admitted to drinking alcohol while taking the medication, and she stopped taking the medication completely after two days.

## II.    Procedural Background

In late July 2021, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Anthony. The Department alleged that (1) mother had a "history of substance abuse" and her "current abuse[] of amphetamine and methamphetamine" rendered her "incapable of providing regular care and supervision" of Anthony, and that father had "failed to protect" Anthony because he knew of mother's substance abuse but allowed her to reside in the home and have unlimited access to Anthony; (2) mother had a "history of mental and emotional problems including auditory and visual hallucinations, suicidal ideation, homicidal ideation, [and] paranoia" which rendered her "incapable of providing [Anthony] with regular care and supervision," and that father had "failed to protect" Anthony because he knew of mother's mental and emotional problems but

4

allowed her to reside in the home and have unlimited access to Anthony; and (3) mother's erratic driving at high rates of speed and running through red lights while Anthony was a passenger in the vehicle, as well as shattering glass and causing holes in the walls of the home, created a "detrimental and endangering situation[] and home environment" for Anthony. The Department further alleged that this conduct placed Anthony at substantial risk of serious physical harm, thereby rendering dependency jurisdiction appropriate under Welfare and Institutions Code section 300, subdivision (b)(1).[2]

In follow-up interviews by the Department, mother denied current use of drugs or alcohol and she denied having any history of drugs or alcohol. Father denied having any knowledge of mother's drug use or mental history during their seven-year relationship and claimed he only became aware of mother's issues in late June 2021.

In September 2021, the juvenile court held a jurisdictional and dispositional hearing. The court struck the reference to mother's "*history*" of substance abuse and otherwise sustained all of the allegations in the petition, expressly finding that father "tr[ied] to assist [mother] a few times, but after seeing her behavior, knowing that she was on drugs, he still left [Anthony] . . . a five year old" with mother "instead of just taking [Anthony] out of mother's home and protecting [him]." The court found that "pursuant to . . . section 361 [subdivision] (c) and by clear and convincing evidence[,] there's still a substantial danger if [Anthony] was returned to the physical custody of the parents." The court found no reasonable means to protect Anthony short of

---

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

removal, declared him a dependent of the court, removed Anthony from both parents, and ordered the Department to provide reunification services consisting of drug, alcohol, and psychiatric treatment for mother, and individual counseling for father.

Father filed this timely appeal. Mother did not appeal.

## III. *Postappeal events*[3]

On September 20, 2022, while this appeal was pending, the juvenile court held a review hearing pursuant to section 366.21, subdivision (f). At that hearing, the court vacated its prior removal order and placed Anthony with mother.

## DISCUSSION

## I. Father's Challenge to Dependency Jurisdiction

Father challenges a portion of the juvenile court's first two jurisdictional findings. Specifically, he does not challenge the court's findings that mother was abusing drugs and had a history of mental and emotional problems, or that those conditions placed Anthony at substantial risk of serious bodily injury; all he challenges is the court's further finding that *father* "failed to protect" Anthony. Father asserts that there was insufficient evidence that he *knew* of mother's drug abuse or mental health issues, such that he could not be found liable for failing to protect Anthony from circumstances of which he was ignorant. We review father's challenges to these specific factual findings for substantial evidence, asking only whether the record, when

---

[3] We grant the Department's request for judicial notice and, on our own, take judicial notice of the juvenile court's September 20, 2022 minute order. (Evid. Code, §§ 452, subd. (d), 453, 459, subd. (a).)

6

viewed in the light most favorable to the juvenile court's findings, contains evidence that is reasonable, credible, and of solid value for a reasonable jurist to make those findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

As a threshold matter, we must decide whether father may assert this challenge at all. Dependency jurisdiction attaches *to a child*, not his parent. (*In re D.M.* (2015) 242 Cal.App.4th 634, 638.) As a result, mother's failure to appeal the jurisdictional findings means that the court's jurisdiction over Anthony remains intact based on *her conduct alone*, and hence regardless of the outcome of father's appeal. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452.) Of course, we still have the discretion to reach the merits of father's challenge to the portions of juvenile court's jurisdictional findings if those findings (1) serve as the basis for dispositional orders that are also challenged on appeal; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings; or (3) could have other consequences for the appellant, beyond jurisdiction. (*In re D.M.*, at p. 646; *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.) Because the juvenile court's findings that father failed to protect Anthony may be used against father in future dependency proceedings, we elect to reach the merits of father's jurisdictional challenge.

"Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental

7

illness . . . or substance abuse.' (§ 300, subd. (b)(1).)" (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

Substantial evidence supports the juvenile court's finding that father was aware of mother's drug use and mental health problems, and that those problems placed Anthony at risk. Father's statement to Alfonso that mother's meth use was an issue in their relationship is substantial evidence that father was aware of mother's drug problems, yet father still allowed Anthony to remain in mother's care. Mother's calls to father when she was having her "episodes" is substantial evidence that father was also aware of mother's mental health issues, yet father still allowed Anthony to remain in her care. Indeed, father acknowledges he took mother for a walk on the beach to calm her down after mother's mental breakdown in late June 2021. Yet, despite his awareness of mother's mental instability, he allowed her to care for Anthony until the Department intervened in mid-July. This is ample evidence of a failure to protect justifying the adverse section 300 jurisdiction finding against father.

Father urges that the record shows that he was, at most, aware of mother's drug use and mental health problems, but not that those problems posed a risk to Anthony. Father's contention is belied by the record. A meth addiction severe enough to disrupt an adult relationship is, when construed in the light most favorable to the juvenile court's finding, also severe enough to pose a risk to the care of a young child. Father asserts that his awareness of mother's "episodes" is insufficient to show risk because the record does not indicate what happened during those "episodes," but this not only impermissibly construes the term in the light *least* favorable to the juvenile court's finding, but also ignores the evidence that father had to calm mother down after

one of those episodes, a task that would be unnecessary if they were of no consequence. Father lastly emphasizes that he has not lived with mother for a few years, but the record shows that he was aware of mother's problems *despite* this living arrangement; the arrangement does not somehow preclude such awareness.

## II. Father's Challenge to the Juvenile Court's Refusal to Place Anthony in His Custody is Moot

"An appellate court will not review questions which are moot and only of academic importance, nor will it determine abstract questions of law at the request of a party who shows no substantial rights can be affected by the decision either way. [Citation.] An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. [Citations.] On a case-by-case basis, the reviewing court decides whether subsequent events in a dependency case have rendered the appeal moot and whether its decision would affect the outcome of the case in a subsequent proceeding." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054-1055.)

Father's challenge to the trial court's dispositional order is moot because we can no longer render effectual relief as to that issue. Father urged on appeal that the juvenile court violated the mandate of section 361.2, subdivision (a), to place Anthony with him—as the noncustodial parent—*upon removing Anthony from his custodial parent.* Once the juvenile court placed Anthony back with mother as the custodial parent, however, any violation of section 361.2 ceased. (See, e.g., *R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1270 ["'section 361.2 deals specifically with

9

the removal of the child from a custodial parent when there also exists a noncustodial parent'"].)

**DISPOSITION**

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____,  P. J.

LUI


_____, J.

CHAVEZ

10