Filed 4/24/14  In re G. M. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re G. M., a Person Coming Under the Juvenile Court Law. | B250409 (Los Angeles County Super. Ct. No. CK97057) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JULIO M., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert S. Draper, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Julio M. (Father) challenges the juvenile court's findings under Welfare and Institutions Code section 300, subdivision (g).)[1] Dependency jurisdiction over his daughter G. was established from the conduct of the child's mother, who has not appealed. G. is a dependent if the actions of either parent bring her within the scope of section 300. Father also contests the disposition directing him to participate in drug and alcohol counseling and testing. The court has authority to order services after the child is declared a dependent and placed with the custodial parent.

## FACTS

In December 2012, the Department of Children and Family Services (DCFS) received a referral alleging caretaker abuse and neglect of G. M., born in April 2011. G.'s custodial parent, Christina V. (Mother), was incarcerated and the child was living on the streets with a homeless person. When G. was located, she was dirty, hungry, wearing a thin sweater and pajamas and lacked shoes, despite the cold weather. G. was taken into protective custody.

DCFS filed a petition alleging that Mother was incarcerated and made no appropriate plan for G.'s care and supervision. Mother appeared, in custody, on December 24, 2012, and denied the allegations. She identified Father as G.'s biological father, and indicated that he is incarcerated. On a parentage questionnaire, Mother wrote that Father was not present at G.'s birth, they are not married, and they were not living together at the time of G.'s conception and birth; however, Father held himself out as G.'s father and paid one month of financial support for the child. The court deemed Father to be an alleged parent, and found a prima facie case for detaining G.

DCFS filed an amended petition alleging that Mother and Father were incarcerated and failed to make appropriate plans for G.'s care. DCFS submitted information showing

---

[1] The statute states that a child may be declared a dependent of the juvenile court if "the child's parent has been incarcerated . . . and cannot arrange for the care of the child; or a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child . . . ." All statutory references in this opinion are to the Welfare and Institutions Code.

that Mother and Father have an extensive history of drug-related arrests and convictions. Mother met Father in 2010, when he was released from prison, and she soon became pregnant with G. Mother admitted to using marijuana, but denied usage of any other drugs, despite her criminal history involving cocaine purchases.

On January 18, 2013, Father appeared in custody and stated that he did not know if he is the parent of G. He denied the allegations in the petition. At Father's request, the court ordered DNA testing.

In a prison interview, Father stated that there was "no way" he could be the father of G. He and Mother met on the street the day he was released from prison, became intoxicated, had unprotected sex, and two weeks later Mother announced that she was pregnant. He added, "Hell no. She is not mine," noting that Mother was sexually involved with other men. On the other hand, Father agreed that if his paternity was established, "he would take responsibility . . . and would provide for G. as best as he could." He occasionally spent time with Mother, but "the relationship was not significant." Father has a record for drug-related charges such as possession of crack cocaine. He denied using cocaine, only alcohol and marijuana.

Mother was released from jail and entered a residential drug treatment program. She was participating in parenting, domestic violence, anger management, life skills, drug classes and early recovery classes. Mother was compliant with all aspects of the program, and G. could reside with Mother at the facility, with court approval. Mother expressed regret for taking G. "for granted" and never imagined that her child would be detained, or that she would be sent to jail after testing positive for marijuana. Mother was disappointed that Father denied paternity, and described him as a user of "crack" and "crystal," which made him paranoid.

The court adjudicated the petition as to Mother on March 14, 2013. It sustained allegations that Mother was incarcerated and failed to make appropriate plans for G.'s supervision, which endangered the child's physical health and safety. Father's hearing was continued because DNA testing was not completed.

3

Moving to disposition, the court declared G. a dependent of the juvenile court. It placed G. in Mother's care, so long as Mother was staying in her rehabilitation program. Mother was ordered to complete a drug program with random testing and parenting classes.

DNA tests showed a 99.99 percent probability of paternity between Father and G. A jurisdiction hearing for Father was conducted on May 28, 2013. He was incarcerated, but attended the hearing and anticipated being released in October 2013. Father indicated his willingness to support G. He opposed jurisdiction because Mother was supposed to be taking care of G. when the child was detained, at a time when Father was imprisoned.

The court sustained an allegation that Father was incarcerated, unable to provide care and supervision for G., and failed to make appropriate plans for the child's care, endangering her physical health and safety. Moving to disposition, the court found by clear and convincing evidence that there would be a substantial risk of harm if G. was not removed from Father's physical custody. The court ordered Father to participate in a drug and alcohol program with weekly random tests. He was given monitored visitation.

### DISCUSSION

### 1. Appeal and Review

Father appeals from the disposition, which is an appealable order. (§ 395; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 196.) We review jurisdictional findings and the disposition to see if any substantial evidence, contradicted or uncontradicted, supports them. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

### 2. Juvenile Court Jurisdiction

Father contends that the jurisdictional findings against him are not supported by substantial evidence. Findings were made against Father two months after jurisdiction was asserted over G. based on Mother's conduct. There is no challenge to the court's

4

jurisdiction based on Mother's conduct. "[A] jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent." (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397.)

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor *if any one of the statutory bases* for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773, italics added; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) If there is any basis for asserting jurisdiction, no reversal of the judgment occurs, even if other bases are improper, because the purpose of the dependency proceeding is to protect the child. (*In re Alysha S.*, *supra*, 51 Cal.App.4th at p. 397; *Randi R. v. Superior Court* (1998) 64 Cal.App.4th 67, 72.)

"Father asks us to review the evidentiary support only for the juvenile court's jurisdictional findings involving *his* conduct. Because he does not challenge the jurisdictional findings involving Mother's [conduct], however, any decision we might render on the allegations involving Father will not result in a reversal of the court's order asserting jurisdiction. The juvenile court will still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations. Further, the court will still be permitted to exercise personal jurisdiction over Father and adjudicate his parental rights, if any, since that jurisdiction is derivative of the court's jurisdiction over the minor and is unrelated to Father's role in creating the conditions justifying the court's assertion of dependency jurisdiction." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

Though Father contends that the sustained jurisdictional finding against him makes him "an offending parent" instead of a "nonoffending parent," this distinction only applies to *custodial* parents. (§ 361, subd. (c)(1).) G. never resided with Father: he was not a custodial parent and is not eligible to take custody even if nonoffending. (*In re I.A.*,

*supra*, 201 Cal.App.4th at p. 1494; *In re Miguel C.* (2011) 198 Cal.App.4th 965, 970.) Father relies on *In re Drake M.* (2012) 211 Cal.App.4th 754, 758, 762-763; however, in that case, a father who lived with his infant son had a stake in being deemed a "'non-offending parent,'" so the court reached the merits of his claim.

Father maintains that we should reach the jurisdictional finding against him because it might have some consequence "if [F]ather ever had another child and became involved with dependency court." Father's claim of a possible future impact is "highly speculative." (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1489.) Future dependency proceedings will be based on whatever Father's future situation happens to be, because "a finding of jurisdiction must be based on current conditions. [Citation.] A past jurisdictional finding . . . would be entitled to no weight in establishing jurisdiction, even assuming it was admissible for that purpose. Instead, the agency will be required to demonstrate jurisdiction by presenting evidence of then current circumstances" showing a risk of harm. (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1495.) We decline to reach Father's jurisdictional challenge based on his speculative fear of future prejudice. In any event, Father was admittedly in prison and could not care for or supervise G., "rendering his imprisonment enough for the court to exercise jurisdiction." (*In re Alexis H.* (2005) 132 Cal.App.4th 11, 16.)

## 3. **Disposition**

The juvenile court found "a substantial danger if the child were returned home to Father . . . and there are no reasonable means by which the child's physical health can be protected without removing the child from the physical custody of the father." The court cited section 361, subdivision (c) as the basis for its finding.[2]

---

**2**     The statute reads, "A dependent child may not be taken from the physical custody of his or her parents . . . *with whom the child resides* at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence" of a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's physical custody. (Italics added.)

Father contends that the juvenile court committed legal error, because Father never had custody of G. and section 361 only applies to custodial parents. The statute the court applied "'does not, by its terms, encompass the situation of the noncustodial parent.'" (*R.S. v. Superior Court* (2007) 154 Cal.App.4th 1262, 1270; *In re V.F.* (2007) 157 Cal.App.4th 962, 969.) Moreover, the statute that applies to noncustodial parents who seek custody, section 361.2, does not apply here because the juvenile court placed G. with Mother. Father did not seek custody of G. The court's order removing G. from Father was superfluous because Father lacked custody to begin with; however, Father is not prejudiced by the order so any error is harmless.

The upshot, Father argues, is that the juvenile court could not order him to participate in "reunification" services, specifically, a drug program. The record shows that Father has a history of drug-related criminal offenses. Mother described Father as a user of crack cocaine and methamphetamine, which induces paranoia in Father.

The court ordered DCFS to provide G. and both parents with "Family Maintenance Services."[3] When a child is returned to parental custody at the disposition hearing, as G. was returned to Mother, the court is not required to provide reunification services. (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19.) Rather, the agency provides family maintenance services "'in order to maintain the child in his or her own home'" after the child has been adjudicated a dependent of the court under section 300. (*Pedro Z.*, at p. 20.) The Legislature has specifically provided that "[f]amily reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court." (§ 16507, subd. (b).) In this instance, G. was not placed in out-of-home care or with Father, the previously noncustodial parent.

This family does not qualify for reunification services under section 16507. (*In re Pedro Z.*, *supra*, 190 Cal.App.4th at p. 20.) When the court declared G. a dependent and

---

**3**  We deny Father's request to take judicial notice of postdisposition minute orders: they are not proof that reunification services were ordered.

placed her back in Mother's care, the court was entitled to order that the parents participate in child welfare services or services provided by an appropriate agency designated by the court. (§ 362, subd. (c).) The order "may include a direction to participate in a counseling or education program . . . ." (§ 362, subd. (d).) Here, the court specified "services" for Father of drug and alcohol counseling, drug testing and monitored visits. Even if the court did not sustain allegations related to substance abuse, a service plan formulated to correct parental deficiencies—including substance abuse—is not an abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1005, 1008.)

Father's claim that the juvenile court had no authority to direct Father's participation in services has no merit. Section 362 contains no requirement that the services be available to Father in prison.[4] In any event, Father was due to be released a few months after the May 28, 2013 disposition hearing, and the juvenile court planned to review Father's access to drug rehabilitation programs at the next hearing.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

---

[4] By contrast, the reunification statute Father cites, section 361.5, subdivision (e)(1), requires consideration of an incarcerated parent's access to services. As noted, this family qualified for maintenance services under section 362.

8